J-A21011-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: T.T., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.T., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 615 EDA 2019 |

Appeal from the Order Entered January 22, 2019
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-DP-0002665-2018

BEFORE:  BOWES, J., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 27, 2019**

A.T. ("Mother") appeals from the January 22, 2019 order of adjudication and disposition that granted the dependency petition filed by the Philadelphia Department of Human Services ("DHS") and deemed Mother a perpetrator of child abuse against her son, T.T.[1]  Mother challenges the juvenile court's determination of child abuse.  We affirm in part, vacate in part, and remand for further proceedings.

T.T. was born during April 2011.  He suffers from mental and behavioral health problems, including homicidal and suicidal ideations, attention deficit hyperactivity disorder ("ADHD") and oppositional defiant disorder ("ODD").

---

[1] While the order did not expressly identify Mother as a perpetrator of child abuse, it stated the court's finding of child abuse and its conclusion that the child protective service report, which implicated Mother as the perpetrator, was founded under the Child Protective Service Law.

He has endured multiple hospitalizations, some of which were triggered by tantrums and aggressive behavior toward Mother, who is his biological aunt. T.T. receives mobile therapy through Citizens Acting Together Can Help ("CATCH"), who previously interceded in T.T.'s contentious, sometimes combative, relationship with Mother.

The certified record reveals the following facts. On December 17, 2018, Adrienne Cox, T.T.'s CATCH therapist, intervened in an altercation between Mother and T.T. that erupted at the family residence after the then-seven-year-old child broke a window in the home. Mother expelled T.T. from the home and refused entry when the child attempted to reenter the residence. At some point, Mother engaged the assistance of Ms. Cox, who, upon her arrival at the residence, observed T.T. outside of the home. A neighbor informed Ms. Cox that T.T. had been left outside unattended for at least two hours without a hat or jacket. The neighbor also indicated to Ms. Cox that Mother has engaged in similar behavior in the past. Even after Ms. Cox arrived, Mother refused to permit T.T. entry, and she clashed with the child verbally. That argument escalated to a point where Ms. Cox was required to restrain Mother physically before twice calling the Philadelphia Police Department for assistance. When the police arrived, Mother was adamant that T.T. could not return inside the home. Accordingly, the child was taken to DHS, who obtained an order of protective custody ("OPC").

Following the ensuing shelter care hearing on December 19, 2018, the juvenile court lifted the OPC, and temporarily committed T.T. to DHS's legal and physical custody. The court permitted Mother to participate in supervised visitation with her son at the agency. Meanwhile, on December 18, 2018, DHS opened a child protective service ("CPS") report alleging that Mother's actions during the December 17, 2018 incident were tantamount to child abuse, *i.e.*, a repeated, prolonged, or egregious failure to supervise. ***See*** N.T., 1/22/19, DHS Exhibit 1; CPS Report #8382193, 12/18/18, at 2. Three days later, DHS filed a dependency petition alleging that T.T. was both (1) a dependent child due to a lack of proper care or control and/or abandonment and (2) a victim of child abuse in relation to the December 17, 2018 ordeal.

At the outset of the dependency hearing, the parties stipulated to the finding of dependency due to Mother's present inability to parent. N.T., 1/22/19, at 5-6. Specifically, DHS recommended "an open petition with the understanding that once the child is ready for discharge from the hospital that he may be returned to [M]other's care with supervision." ***Id***. at 6. Mother agreed with the dependency adjudication, but contested the allegation that she perpetrated child abuse.

During the ensuing hearing, DHS presented the testimony of Gabriel Li, the DHS social worker who investigated the CPS report. Mr. Li testified that he interviewed T.T., Ms. Cox, and Mother, and reviewed the police report, which was neither admitted into evidence nor included in the certified record.

*Id*. at 8, 9, 16. In summary, Mr. Li testified that T.T. admitted that he broke a window and that Mother would not allow him to reenter the home. *Id*. at 8-9. As it relates to physical abuse, T.T. indicated that he was not subject to abuse while in Mother's care. *Id*. at 15. Likewise, Mother admitted to Mr. Li that she prohibited the child from entering the home, that she regretted her decision, and that she wanted the child to return home. *Id*. at 9, 15. Mr. Li also testified that Mother "confirm[ed] the facts of the [CPS] report." *Id*. at 9. As it relates to Ms. Cox, the primary witness to the incident, Mr. Li recounted that Mother called Ms. Cox to the home, and Ms. Cox eventually observed T.T. outside of the home. *Id*. at. 17-18.

Over Mother's hearsay objection, Mr. Li also recounted the allegations outlined in the CPS report which was subsequently admitted into the record as substantive evidence. *Id*. at 7, 13, DHS Exhibit 1. In relation to the hearsay arguments that Mother asserts in her brief, the CPS report included two overlapping sets of allegations. The first statement, designated as the "State Narrative," provided as follows:

Type and Nature of Maltreatment

> [T.T.]'s case manager called [the Reporting Source] to come get [T.T.] because [he] had a tantrum and was out of control. [T.T.] was outside by himself with no hat or jacket. [T.T.] had been out for a couple hours. [Mother] left him there alone. [Mother] came back and got in a verbal altercation and attempted to become aggressive with [T.T.]. [Ms. Cox] restrained [Mother]. [Ms. Cox] called police twice. Police came and took [T.T.]. [Child] has been hospitalized in the past for aggression towards [Mother] and tantrums. . . . .

DHS Exhibit 1 at 3.  The second, largely duplicative, description is styled

"Philadelphia DHS Narrative."  *Id*.  In pertinent part, that statement reads,

> . . . Reporting source states [T.T.'s] (7 yrs old) Case Manager [(Ms. Cox) was] called . . . because [T.T.] had a tantrum and was out of control.  [The reporting source] states[: T.T.] was outside by himself with no hat or jacket on[;] . . . [T.T.] had been out for a couple hours[;] . . . [Mother] left him there alone[;] . . . Mother came back and got in a verbal altercation and attempted to become aggressive with [T.T.;] . . . [Ms. Cox] restrained Mother[;] . . . and [Ms. Cox] called the [p]olice twice[, who] . . . came and took [T.T.].  . . .  [The reporting source] states a neighbor had informed [Ms. Cox] that [T.T.] had been outside [and that] . . . Mother has done this in the past.

*Id*. at 4.  The record does not reveal who compiled the CPS report or authored

either of the foregoing narratives.

After Mr. Li testified as to all of the preceding evidence, the juvenile

court entered the above-referenced adjudication and disposition determining,

*inter alia*, that T.T. was a victim of child abuse and that the CPS report was

founded pursuant to the Child Protective Services Law ("CPSL").[2]  Mother filed

_____

[2] The CPSL defines a founded report, in pertinent part, as:

> A child abuse report involving a perpetrator that is made pursuant to this chapter, if any of the following applies:

> (1) There has been a judicial adjudication based on a finding that a child who is a subject of the report has been abused and the adjudication involves the same factual circumstances involved in the allegation of child abuse. The judicial adjudication may include any of the following:

> . . . .

- 5 -

a timely notice of appeal and a concomitant concise statement of errors pursuant to Pa.R.A.P. 1925(b). The statement of errors raised two issues which Mother reiterates in her brief as follows:

1. Did the trial court err as a matter of law and abuse its discretion when it made a finding of child abuse where the Philadelphia Department of Human Services failed to prove by clear and convincing evidence that the child was abused as defined by 23 Pa.C.S. § 6303[?]

2. Did the trial Court err as a matter of law and abuse its discretion when it based its finding of child abuse under the Child protective Services law on hearsay statements in violation of 23 Pa.C.S.A. §§ 5985.1 and 5986; [of] the Juveniles Act; the Pennsylvania Rules of Evidence; and Appellant's rights to due process[?]

Mother's brief at 5.

Our standard of review of a finding of child abuse in a dependency case is as follows:

The standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citations omitted); *see also In the Interest of L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility

---

(iii) A finding of dependency under 42 Pa.C.S. § 6341 (relating to adjudication) if the court has entered a finding that a child who is the subject of the report has been abused.

23 Pa.C.S. § 6303(a).

- 6 -

determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted).

While dependency proceedings are governed by the Juvenile Act, 42 Pa.C.S. §§ 6301–6375, the [CPSL] controls determinations regarding findings of child abuse, which the juvenile courts must find by clear and convincing evidence. *See In the Interest of J.R.W.*, 631 A.2d 1019 (Pa.Super. 1993). As the Supreme Court explained in *In the Interest of L.Z.*, *supra* at 1176, "[as] part of [a] dependency adjudication, a court may find a parent to be the perpetrator of child abuse," as defined by the CPSL.

*In The Interest of T.G.*, 208 A.3d 487, 490 (Pa.Super. 2019).

Instantly, DHS's petition for an adjudication of dependency asserted that Mother committed child abuse by failing to supervise T.T. during the two-hour period he was banished from the family residence. In pertinent part, the CPSL defines child abuse as follows:

(b.1) Child abuse.— The term "child abuse" shall mean intentionally, knowingly, or recklessly[3] doing any of the following:

. . . .

(7) Causing serious physical neglect.

23 Pa.C.S. § 6303(b.1)(7). As it relates to the case at bar, serious physical neglect is defined as "[a] repeated, prolonged or egregious failure to supervise a child in a manner that is appropriate considering the child's developmental age and abilities[,]" when the neglect "endangers a child's life or health,

---

[3] The CPSL incorporates the statutory definitions of intentionally, knowingly, and recklessly that our legislature outlined in § 302(b)(3) of the Crimes Code relating to the general requirements of culpability. *See* 23 Pa.C.S. § 6303(a).

threatens a child's well-being, causes bodily injury or impairs a child's health, development[,] or functioning[.]" 23 Pa.C.S. § 6303(a).

The crux of Mother's first issue is that "[t]he entirety of the non-hearsay evidence against Mother" is insufficient to demonstrate by clear and convincing evidence that she intentionally, knowingly, or recklessly caused serious physical neglect by precluding T.T. from re-entering the home. Mother's brief at 9. Primarily, Mother asserts that the Commonwealth's only witness, Mr. Li, lacked first-hand knowledge of the incident and engaged in conjecture about the duration of the child's exile, the extent of Mother's supervision of the child while he was outside, the weather conditions on the day of the altercation, and the child's proximity to a hazardous public roadway. *Id*. at 10, 13-15. In sum, she concludes that Mr. Li's testimony, "in addition to being inadmissible hearsay, did not provide any detailed information so as to make [it] clear and convincing evidence of abuse." *Id*. at 10. For the following reasons, we find that no relief is due.

Mother's argument that DHS failed to prove its case by clear and convincing evidence ignores the applicable standard of review. Thus, while Mother proffers a cogent claim challenging the admissibility of various aspects of DHS's evidence, her assertion that DHS adduced insufficient evidence to support its allegation of abuse fails. It is a well-ensconced legal principle that appellate courts do not review sufficiency claims on a diminished record. *See e.g.*, *D'Alessandro v. Pennsylvania State Police*, 937 A.2d 404, 410 (Pa. 2007) (plurality) (quoting *Commonwealth v. Lovette*, 450 A.2d 975, 977

(Pa. 1982)) ("A sufficiency claim will not be reviewed on a diminished record, 'but rather on the evidence actually presented to the finder of fact rendering the questioned verdict.'"); **Commonwealth v. Weaver**, 76 A.3d 562, 569 (Pa.Super. 2013) (law is clear that we are required to consider all evidence that was actually received without consideration as to admissibility of evidence or whether court's evidentiary rulings were correct).

Moreover, notwithstanding Mother's protestations challenging the propriety of Mr. Li's testimony about the weather conditions on the date of the incident, the Court views the evidence actually adduced in a light most favorable to DHS as the prevailing party and giving it the benefit of all reasonable and logical inferences that can be drawn from the evidence. **See e.g.**, **S.W. v. S.F.**, 196 A.3d 224, 230 (Pa.Super. 2018) (in reviewing challenge to sufficiency of the evidence, appellate court must view evidence in light most favorable to verdict winner, giving prevailing party the benefit of all reasonable inferences). As the incident occurred during mid-December in Pennsylvania, it is reasonable to infer that it was cold outside when Mother expelled her son from the house for two hours without a coat or hat.

Similarly, our standard of review precludes this Court from adopting Mother's supposition that she supervised the child personally from inside the home, that she enlisted the assistance of a neighbor to watch over T.T. while he was outside, or that the eventual arrival of Ms. Cox and the police officer eased her burden of supervisor. We address these points *seriatim*. First, the certified record casts doubt on Mother's assertion that she engaged the

assistance of a neighbor. On cross-examination, Mr. Li rebuffed counsel for Mother's suggestion that a neighbor was reported to have aided Mother during the event. He testified, "No. That neighbor was not mentioned," and when counsel subsequently revisited the topic, Mr. Li reiterated, "I can't confirm the neighbor." N.T. 1/22/19, at 17. Hence, the record does not support Mother's contention that her neighbor supervised the outcast child.

Moreover, the record does not sustain Mother's theory that either the police or Ms. Cox supervised the child during this period. Recall that Mr. Li specifically testified that Ms. Cox **eventually** located T.T. outside of the home, presumably upon her response to Mother's beckoning. Furthermore, the police did not arrive until Ms. Cox twice requested police assistance because Mother became aggressive with T.T., and Ms.Cox had to restrain her. It strains credulity for Mother to attribute supervision to Ms. Cox or the responding police officer when it is clear from the certified record that neither arrived until sometime after Mother expelled her son from the home.

Finally, while Mother very well could have monitored T.T. throughout his two-hour banishment, there is no evidence to support that notion and, though logical, we cannot reach such an inference because Mother was not the prevailing party. **See S.W.**, **supra** at 230. Thus, when viewed in a light most favorable to DHS, the evidence fails to support Mother's assertion that either she, Ms. Cox, a police officer, or a neighbor supervised T.T. for the two hours that he was banished from the home without a hat or coat on that December day.

In sum, contrary to Mother's assertion, DHS adduced clear and convincing evidence that Mother perpetrated child abuse pursuant to § 6303(b.1)(7). At a minimum, the facts of record establish that Mother became angry with T.T. following one of the child's tantrums and made him stay outside of the home, alone, for at least two hours, during mid-December. Mother acknowledged these actions and noted her regret to Mr. Li. Moreover, as it relates to whether Mother's failure to supervise the child while he was forced to remain outside of the house for two hours was either repeated, prolonged or egregious, the evidence reveals that this is not the first time Mother reacted to T.T.'s behavior by banishing him from the home, as reported by a neighbor in the CPS report that was admitted into evidence at trial. In this vein, the facts that T.T. was seven years old and suffered from severe mental health problems, including suicidal and homicidal ideations, are particularly relevant to whether Mother's behavior constitutes serious physical neglect. *See* 23 Pa.C.S § 6303 ("'Serious physical neglect' [includes] [a] repeated, prolonged or egregious failure to supervise a child in a manner that is appropriate considering the child's developmental age and abilities."). Since the clear and convincing evidence actually presented during the trial supports the juvenile court's finding of child abuse, we do not disturb its determination on this basis. Mother's contrary interpretation, which examines a diminished record and relies upon inferences favorable to her, ignores the applicable standard of review.

Next, we address Mother's claim that the juvenile court erred in admitting hearsay evidence over her objections, an evidentiary issue that is separate and distinct from Mother's initial challenge to the sufficiency of the evidence that DHS actually adduced. Specifically, Mother asserts that the juvenile court erred in admitting the CPS report as a business record without requiring DHS to lay a proper foundation to any noted hearsay exceptions. Mother also challenges the juvenile court's decision to admit into evidence Mr. Li's testimony reiterating the hearsay from the CPS report, or the statements proffered to him by T.T., Mother, and Ms. Cox, some of which contains hearsay within hearsay, *i.e.*, the entire CPS report and Ms. Cox's reference to the neighbor who noted that Mother has engaged in similar behavior in the past. For the following reasons, we agree with Mother's argument that the evidence was inadmissible and remand for a new hearing.

In **In re A.J.R.-H.**, 188 A.3d 1157, 1166-67 (Pa. 2018), our Supreme Court restated that appellate court's review a trial court's decision to admit or exclude evidence for an abuse of discretion. "An abuse of discretion exists where the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." **In re Duran**, 769 A.2d 497, 506 (Pa.Super. 2001) (cleaned up).

As noted, *supra*, the gravamen of Mother's complaint is that the CPS report is barred by the rule against hearsay. Hearsay is defined as an "extra judicial declaration offered to prove the truth of the matter asserted."

***Keystone Dedicated Logistics, LLC v. JGB Enterprise, Inc.***, 77 A.3d 1

(Pa.Super. 2013) (quoting ***Aldridge v. Edmunds***, 750 A.2d 292, 296 (Pa.

2000)).   Pennsylvania Rule of Evidence 802 precludes the admission of

hearsay unless an exception applies.  In its Rule 1925(a) opinion, the juvenile

court observed that the CPS report was hearsay that was admissible under

the business record exception outlined in Pa.R.A.P. 803(6), which provides, in

pertinent part:

> **Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if,
>
> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

In explaining its decision to admit the CPS report, the juvenile court

concluded, "These are Child Protective Services Reports (CPS) of incidents

reported to DHS, which are kept in the normal course of business and are self-

authenticating and are used by social worker investigators to interview and gather more information." Trial Court Opinion, 4/2/19, at 12. Significantly, however, while the juvenile court outlined the five requirements of the business records exception and recited that the report was compiled "was kept in the normal course of business," it admitted the document into evidence without requiring DHS to provide a proper foundation to support that finding or confirm the fidelity of the report's preparation.

The High Court's discussion in ***In re A.J.R.-H.*** informs our review of Mother's assertion that the juvenile court erred in admitting the CPS report as a business record. In that case, our Supreme Court rejected the orphans' court's rote admission of a collection of exhibits under the business records exception without a proper foundation. It reasoned,

> Without question, the manner in which these exhibits were admitted into evidence in the first instance failed to satisfy the requirements of the business records exception. CYS did not present any witness in support of the exhibits' admission, let alone "the custodian or other qualified witness." ***See*** 42 Pa.C.S. § 6108(b); Pa.R.E. 803(6)(D). Instead, all of the exhibits were presented to the court for admission, in bulk, by the county solicitor prior to calling any witnesses to testify. . . . There was also no testimony of record that someone with knowledge created any of the 167 exhibits at or near the time of the event or that they were created in the regular practice of the various agencies from which the documents came. ***See*** 42 Pa.C.S. § 6108(b); Pa.R.E. 803(6)(A), (C). Additionally, none of the documents were certified copies. ***See*** Pa.R.E. 803(6)(D), 902(11). The only information provided at the time of the exhibits' admission was the county solicitor's assurance, in response to the leading question posed by the orphans' court, that the exhibits were contained in CYS's files and "were collected in the ordinary course of business with regard to this case." N.T., 8/12/2016, at 18-19; ***see*** 42 Pa.C.S. § 6108(b); Pa.R.E. 803(6)(B).

- 14 -

*Id*. at 1167-68 (footnote omitted). Thus, the High Court held that it was error for the orphans' court to admit the exhibits without first establishing the proper foundation to support the business records exception. As the exhibits were not prepared by the testifying witnesses, and CYS neglected to lay a foundation with regard to their preparation, the exhibits were held to be inadmissible.

Furthermore, as it relates to whether the evidentiary error was harmless in light of the concurrent testimony that CYS adduced at the evidentiary hearing, the Supreme Court stressed, "the standard for finding harmlessness in a termination case requires us to conclude that the evidentiary error could not have had any impact upon the orphans' court's decision." *Id*. at 1175. Notably, it continued, "[t]hat there may have been properly admitted evidence sufficient to support termination does not render the orphans' court's substantial evidentiary error harmless." *Id*.

Thereafter, the *In re A.J.R.-H.* Court clarified that, while couched as harmless error, this Court's practice of affirming a trial court decision on any basis supported by the certified record is, in reality, an application of the "right for any reason" doctrine. *Id*. at 1176. Importantly, the Court observed that this doctrine is inappropriate where an unresolved dispute of fact exists. It explained, "appellate courts should refrain from assuming the role of a fact-finder in an attempt to sustain the action of the court below." *Id*. (quoting *Bearoff v. Bearoff Bros., Inc.,* 327 A.2d 72, 76 (Pa. 1974)). Hence, according to the High Court, the right for any reason doctrine "may not be

used to affirm a decision when the appellate court must weigh evidence and engage in fact finding or make credibility determinations to reach a legal conclusion." *In re A.J.R.-H.*, *supra* at 1176.

While the Supreme Court's discussion *In re A.J.R.-H.* addressed the evidentiary issues in the context of an involuntary termination of parental rights proceeding in the orphans' court, the identical principles of evidence and harmless error apply to the juvenile court's child abuse hearing. Instantly, we concluded that the juvenile court abused its discretion in admitting the CPS report. Notwithstanding the juvenile court's declaration that the document was self-authenticating and fashioned in the normal course of DHS business, there is no evidence in the record to support his finding. While counsel for DHS responded to Mother's objection by claiming, "It's just the [CPS] report, Your Honor," there was no testimony by a custodian or other qualified witness to support the notion that the report was made and kept in the course of regularly conducted activity. Nor was evidence presented that the report was either a self-authenticating certified public record pursuant to Pa.R.A.P. 902(1), certified copy of a public record pursuant to Pa.R.A.P. 902(4), or a certified domestic record of a regularly conducted activity in compliance with Pa.R.E. 902(11).

Likewise, DHS did not present even a rudimentary foundation that its sole witness, Mr. Li, either prepared the CPS report or was its custodian. In fact, DHS neglected to establish that the person who actually drafted the report created it at the time of the incident. Although the childline operator

- 16 -

who received the information from the unidentified reporter ostensibly collected the underlying information contemporaneous with that telephone call, there is no testimony to establish when the call was received in relation to the allegations of abuse and the operator is not identified as the person who actually drafted the CPS report. In sum, because the CPS report, marked DHS Exhibit 1, was not prepared by the testifying witnesses and DHS neglected to lay a foundation with regard to its preparation pursuant to Rule 803(8) (A-D), the exhibit is inadmissible as substantive evidence and the juvenile court erred in overruling Mother's hearsay objection.

Furthermore, since the majority of Mr. Li's in-court testimony was founded on the same out-of-court statements compiled in the CPS report, his testimony parroting those allegations is insufficient to cure the juvenile court's error in admitting the inadmissible hearsay. *See In re A.J.R.-H., supra* at 1172-73 (caseworker could not testify to the substance of inadmissible documentary evidence); *see also In re Sanders Children*, 312 A.2d 414, 416 (Pa. 1973) ("The witness'[s] first-hand knowledge of some of the facts contained in the report cannot justify the admission of otherwise incompetent hearsay testimony drawn from the same report."). Presently, the sum total of Mr. Li's testimony relevant to abuse that did not flow from the inadmissible CPS report is that the child broke a window, Mother reacted by prohibiting him from reentering the home, she subsequently regretted that decision, and by the time of the interview with Mr. Li, Mother welcomed her son's return. Mr. Li continued that Ms. Cox informed him that Mother called her to the home for

assistance, and upon arrival observed T.T. outside. While Mr. Li also testified that Mother confirmed the facts of the CPS report, that ratification does not negate the remaining unresolved disputes of fact concerning, *inter alia*, (1) the precise duration of the incident; (2) the temperature and weather conditions that day; (3) the child's proximity to the roadway; and (4) Mother's supervision from inside the home or her awareness that a neighbor was monitoring the situation. As Mr. Li's testimony does not resolve any of these material factual disputes, the juvenile court's error cannot be deemed harmless. ***See In re A.J.R.-H.***, ***supra*** at 1176 (the right for any reason doctrine "may not be used to affirm a decision when the appellate court must weigh evidence and engage in fact finding or make credibility determinations to reach a legal conclusion.").

For all of the foregoing reasons, we affirm the portion of the January 22, 2019 order of adjudication and disposition that adjudicated T.T. dependent and vacate the portion of the order that found that T.T. was the victim of child abuse as defined at 23 Pa.C.S. § 6303(b.1)(7), and we remand the case to the juvenile court for a new hearing and decision on DHS's CPS report.

Order affirmed in part, vacated in part, and remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/27/19