J-A07026-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2305 EDA 2021 |

Appeal from the Order Entered October 13, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0002315-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: A.D.D.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2306 EDA 2021 |

Appeal from the Decree Entered October 13, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000009-2021

BEFORE:  DUBOW, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED MAY 23, 2022**

A.H. ("Mother") appeals from the orders involuntarily terminating her parental rights to A.D.D.H. ("Child") and changing Child's permanency goal to adoption. Mother argues the orders do not serve Child's best interest and the court erred in admitting and considering testimony that Mother had failed a drug test. We affirm the order involuntarily terminating Mother's parental rights and dismiss the appeal from the goal change order as moot.

The court adjudicated Child dependent in October 2018, when he was four months old. Trial Court Opinion, filed December 3, 2021, at 1. The court placed Child in the care of his maternal aunt, where he has since remained. A Community Umbrella Agency ("CUA") tasked Mother with completing drug and alcohol treatment, mental health treatment, and parenting classes, and to visit consistently with Child. *Id.* at 2.

In 2021, the Department of Human Services ("DHS") filed petitions requesting the court change Child's permanency goal to adoption and involuntarily terminate Mother's parental rights. The court held bifurcated hearings on the petitions in September and October 2021. DHS presented the testimony of the CUA case manager, Ryjette McNair, who has been assigned to Child's case since 2019. *Id.* Mother testified on her own behalf.

McNair testified that Mother was unsuccessfully discharged from her first drug, alcohol, and mental health treatment program in 2019 for failure to attend. *Id.* She successfully completed a one-month inpatient treatment program between December 2019 and January 2020, but failed to complete the subsequent outpatient program. *Id.*

McNair testified that she had referred Mother to the Clinical Evaluation Unit ("CEU") for drug screens approximately 30 times, and Mother participated 11 of those times. N.T., 9/24/21, at 10. DHS asked McNair if any of Mother's screens had been positive, and Mother objected on the basis of hearsay. *Id.* The court overruled the objection, stating, "If she [(McNair)] knows through her job[,] then it's part of the file that she has to review in handling

- 2 -

(inaudible). It's not hearsay. It's her working knowledge." *Id.* Mother's counsel responded, "Then, Your Honor, I'd ask for the proper foundation to be laid for the business records exception. Although my objection would remain the same at that point." *Id.* at 10-11. The court then ordered DHS to lay a foundation for the testimony, which proceeded as follows:

> [DHS]: Okay. So you typically sent [M]other to the CEU for the random screens, correct?
>
> [McNair]: Correct.
>
> [DHS]: Okay. And at any point did you receive information that [M]other tested positive? Do you have a date that she tested positive?
>
> [McNair]: Yes.
>
> [DHS]: Okay. What date did she test positive?
>
> [McNair]: 1/30/20.
>
> [DHS]: Okay. And do you know for what substance?
>
> [McNair]: Cocaine.

*Id.* at 11.

McNair testified that Mother has not attended any drug screens since the date she tested positive in January 2020. *Id.* at 12. McNair thereafter personally observed Mother intoxicated during a meeting in April 2021. *Id.* at 12-13. McNair testified that Mother was "[s]louchy, talking very slow, writing very slow. She appeared to be intoxicated." *Id.* at 13. McNair stated that Mother had since enrolled in another six-month treatment program, which began in September 2021. Trial Ct. Op. at 2.

McNair further testified that she referred Mother to parenting classes five times. N.T. at 14. Mother was discharged from one parenting program for failing to attend, and from another due to being intoxicated at meetings. Trial Ct. Op. at 3.

McNair stated that Mother had initially visited with Child in Maternal Aunt's home, but due to Mother's intoxication, visits were moved to supervised visits at the agency. *Id.* Due to the onset of the COVID-19 pandemic, the visits became virtual, but Mother declined the option to participate in in-person visits once they resumed, based on concerns regarding the ongoing pandemic. McNair further testified that outside of her current in-patient treatment program, Mother is homeless. *Id.*

Finally, McNair testified that Child shares a primary parent-child bond with his maternal aunt. Child's maternal aunt provides him "with love, safety, stability, and support and meets all of his emotional, medical, educational, and developmental needs." *Id.* McNair stated that Mother's bond with Child is more akin to a sibling or cousin relationship. *Id.* at 3 n.3. McNair believes it is in Child's best interest for Mother's parental rights to be terminated and Child's placement goal to be changed to adoption. She explained, "This case has been open for over two years. Mom has shown no consistency with her treatment. And . . . the best permanency for the child [is] to be with the person that he looks at as mom." N.T. at 19. McNair does not believe termination of parental rights would cause irreparable harm to Child. Trial Ct. Op. at 3.

Mother testified that she currently attends a drug treatment and outpatient therapy program and undergoes random drug screens once a week. *Id.* at 4. She expects the program will help her find housing following her discharge in six months. *Id.* She stated she has video visits with Child and visits Child in person every weekend, and that Child refers to her as his mother. *Id.*; N.T. at 30. Mother acknowledged that she is not currently capable of caring for Child, but would like to be reunited with Child eventually. Trial Ct. Op. at 4.

Child's counsel informed the court that she was unable to ascertain Child's legal desires, due to his young age, but that she heard Child refer to his maternal aunt as "mommy." *Id.* The *Guardian Ad Litem*/Child Advocate requested the court place Child with maternal aunt permanently. N.T., 10/13/21, at 7.

At the conclusion of the hearings, the trial court issued orders changing the permanency goal to adoption and terminating Mother's parental rights. Mother appealed.

Mother raises the following:

1. Did the trial court err as a matter of law and abuse its discretion by allowing the admission of hearsay testimony regarding Mother's drug screening results into evidence over the objection of Mother's counsel?

2. Did the trial court err as a matter of law and abuse its discretion by terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(b) in the absence of clear and convincing evidence that termination would best serve Child's needs and welfare?

3. Did the trial court err as a matter of law and abuse its discretion by changing the permanency goal to adoption in the absence of clear and convincing evidence that adoption would best serve Child's needs and welfare?

Mother's Br. at 4.

## I. Drug Screen Evidence

Mother first argues the court erred in admitting McNair's testimony that Mother had tested positive for cocaine on January 30, 2020. Mother's Br. at 13. Mother asserts this testimony was hearsay because McNair was testifying to the contents of a drug screen report that was not admitted into evidence. *Id.* at 16. Mother argues that even if the report had been offered into evidence, DHS did not lay the proper foundation to admit it as a business record. She points out that McNair is not an employee of the unit that conducted the screens, and McNair is not the custodian of the drug screen reports. *Id.* at 17-18. Mother further argues that the court's error was not harmless, as it does not meet the standard that the error "could not have had any impact upon the court's decision" to terminate parental rights. *Id.* at 18-19 (quoting *Interest of S.S.*, 252 A.3d 681, 689 (Pa.Super. 2021)).

"[T]he decision of whether to admit or exclude evidence is within the sound discretion of the [trial] court." *In re A.J.R.-H.*, 188 A.3d 1157, 1166-67 (Pa. 2018). We will not disturb the trial court's ruling unless it has abused its discretion—*e.g.*, when it has overridden or misapplied the law. *Id.* at 1167.

The trial court found the results of Mother's drug screen admissible under the "business records exception" to the prohibition against hearsay.[1] Trial Ct. Op. at 15. Rule 803(6) of the Pennsylvania Rules of Evidence provides that "records of a regularly conducted activity," *i.e.*, "business records," are admissible if they meet the following conditions:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> (E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6); **see also** 42 Pa.C.S.A. § 6108. The trial court concluded McNair's testimony regarding the results of the drug screen qualified under the business records exception because

> (A) [McNair] received the results from the Clinical Evaluation Unit which performed the screen; (B) [McNair] regularly keeps these records as a part of her job; (C) making records of parents' drug screen results is a regular practice of her job; (D) as the assigned social worker on the case, [McNair] is a qualified witness; and (E)

---

[1] Hearsay—a statement made out of court and offered to prove the truth of the matter asserted—is not admissible unless it meets an exception set forth by law. **See** Pa.R.E. 801(c), 802.

no circumstances indicated any lack of trustworthiness of the results.

Trial Ct. Op. at 15.

The trial court erred in finding the testimony qualifies for the business records exception. McNair directly testified to the results of Mother's drug screen; DHS offered no documents recording the results of the drug screen as evidence. The exception allowing for the admission of business records does not apply to McNair's testimony.

Furthermore, to the extent McNair's testimony reflected the contents of any documents that could potentially have qualified as admissible under the exception, had they been offered as evidence—such as the drug screen report created by CEU, or a record of the receipt of those results by McNair or the CUA—McNair's testimony failed to authenticate such records. McNair did not testify regarding who at the CEU performed the drug screen, how the results of the screen were recorded by the CEU, how the results were communicated to the CUA, or how the results were recorded or maintained by herself or another employee of the CUA. Nor was there testimony to support the court's findings that McNair received the results directly from CEU, or that she regularly keeps these records as part of her job. McNair's testimony therefore falls woefully short of qualifying for the business records hearsay exception. *See A.J.R.-H.*, 188 A.3d at 1169 (vacating order terminating parental rights where the court relied on documentary evidence and "[n]o witness stated she was able to speak to the mode of each of the documents' preparation, testify

that the documents were created at or near the time of the documented event or conversation, or made in the regular practice of the activity involved"); *In re Sanders Child.*, 312 A.2d 414, 416-17, 417 n.8 (Pa. 1973) (holding testimony recounting summary report of caseworker inadmissible as business record in termination of parental rights hearing where witness did not offer report as evidence and failed to lay foundation for report).[2]

Nevertheless, we agree with the trial court that the error was harmless. In the context of involuntary termination of parental rights, an evidentiary error is not harmless "where, in light of the record as a whole, an erroneous evidentiary ruling could potentially have affected the decision to terminate a parent's rights to his or her child." *In re A.J.R.-H.*, 188 A.3d at 1170.[3]

Here, the trial court found the admission of the challenged evidence was harmless. The court stated it "did not place any weight" on the results of the drug screen, but instead "considered Mother's three years of inconsistent engagement in her drug treatment as well as the testimony demonstrating that Mother's drug abuse disrupted her other two single case plan objectives." Trial Ct. Op. at 15. The court specifically noted that due to her drug use, Mother had been removed from parenting classes and her visits with Child had

---

[2] *See also In re M.A.O.R.*, No. 657 MDA 2018, 2019 WL 2179374, at *4 (Pa.Super. May 20, 2019) (unpublished memorandum) (holding case manager's summary inadmissible hearsay at termination of parental rights hearing).

[3] Although the trial court erroneously cited the standard for harmless error in criminal cases, *see In re A.J.R.-H.*, 188 A.3d at 1170 n.19, the result in this case is the same under the appropriate standard.

been modified. *Id.* at 15-16. The court additionally considered the testimony that Mother has not attended a drug screen since January 2020, McNair personally observed Mother under the influence in April of 2021, and Mother was still battling with addiction as of the time of the hearing. *Id.* at 16. The court concluded, "Mother's single drug screen result from January 2020 is merely cumulative evidence of her drug abuse and did not contribute to this Court's decision in light of all the other testimony presented." *Id.*

Because the trial court ultimately based its decision to terminate Mother's parental rights on uncontested evidence of Mother's ongoing addiction, we hold the error was harmless.[4] No relief is due on this issue.

## II. Termination of Parental Rights

Mother next argues that the court erred in terminating her parental rights. Mother challenges the court's finding there was clear and convincing evidence that termination would best serve the Child's needs and welfare under 23 Pa.C.S.A. § 2511(b).[5] She disputes the trial court's conclusions that Child's primary parental bond is with his maternal aunt and that termination of Mother's parental rights would not cause Child irreparable harm. Mother's Br. at 22. Mother asserts McNair's testimony that Mother and Child share a relationship more akin to cousins or siblings is not convincing, as McNair has

---

[4] *See Int. of K.P.*, No. 1735 EDA 2021, 2022 WL 1016647, at *4 (Pa.Super. Apr. 5, 2022) (unpublished memorandum) (finding result of drug screen was harmless error in involuntary termination of parental rights proceeding).

[5] Mother has not contested the court's finding that grounds for termination exist under Section 2511(a).

- 10 -

never personally witnessed Mother and Child interacting. ***Id.*** at 22-23. Mother also points to her own testimony that she has been visiting with Child every weekend, in addition to video-conferencing visits, and that Child is excited to see her and refers to her as "mom." ***Id.*** at 22.

We review the court's decision to terminate Mother's parental rights pursuant to the following standard.

> A party seeking termination of parental rights bears the burden of establishing grounds for termination by clear and convincing evidence. Clear and convincing evidence is evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. We accept the findings of fact and credibility determinations of the trial court if the record supports them. If the factual findings have support in the record, we then determine if the trial court committed an error of law or abuse of discretion.

***In re Adoption of K.C.***, 199 A.3d 470, 473 (Pa.Super. 2018) (internal quotation marks and citations omitted).

Under Section 2511(b) of the Adoption Act, the trial court must consider "the developmental, physical and emotional needs and welfare of the child" to determine if termination of parental rights is in the best interest of the child. ***See*** 23 Pa.C.S.A. § 2511(b). "One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond." ***In re L.M.***, 923 A.2d 505, 511 (Pa.Super. 2007). However, the existence of a parent-child bond is but one factor for the court to consider and does not supersede a child's need for permanence and

stability. ***In re Adoption of C.D.R.***, 111 A.3d 1212, 1219, 1220 (Pa.Super.

2015). The court must also consider the "love, comfort, security, and stability"

the child might have with his caretakers. ***Id.*** at 1219 (citation omitted).

In its Rule 1925(a) opinion, the trial court explained its analysis under

Section 2511(b):

> Child has spent his entire life with his [maternal aunt] who provides him with love, safety, stability, and support and meets all of his emotional, medical, educational, and developmental needs. The testimony demonstrated that Mother does not and cannot meet any of those needs herself. Further, this Court determined that Child would not suffer irreparable emotional harm if Mother's parental rights were terminated. There was compelling testimony that the Child would not suffer harm if Mother's parental rights were terminated and that Child was significantly bonded with [his maternal aunt]. The testimony demonstrated that Child shares his primary bond with his [maternal aunt], and that although he has a relationship with Mother, that relationship is closer to a "cousin" relationship. In determining that termination would best serve the needs and welfare of the Child, this Court considered that Mother has not been able to meet the Child's emotional, physical, and developmental needs for approximately three years—the Child's entire life—prior to the termination hearing.

Trial Ct. Op. at 13-14 (citations to hearing testimony omitted).

We discern no abuse of discretion in this analysis. Although McNair did

not personally observe Child interact with Mother, the trial court did not give

undue weight to the testimony regarding their lack of parental bond. Nor is

the testimony suspect, considering that Child has spent all but the first four

months of his life in the care of his maternal aunt. Even if the court credited

Mother's self-serving testimony that she has weekly in-person visits with Child

and that he refers to her as his mother, this does not negate the evidence that Child shares a primary parental bond with his maternal aunt. Nor would such visits satisfy Child's need for permanency and stability. DHS provided clear and convincing evidence that termination of Mother's parental rights would be in Child's best interest, and thus we affirm the court's order terminating Mother's parental rights to Child.

### III. Goal Change

Mother's third and final argument is that the court erred in changing Child's permanency goal to adoption. Mother asserts that because Child is in kinship care, and is allegedly bonded with Mother, the court should have considered permanent legal custody with Child's maternal aunt. Mother contends that such custody would provide Child with permanency while preserving Child's right to an ongoing relationship with Mother.

This issue is moot given our decision to affirm the involuntarily termination of Mother parental rights. *See Int. of A.M.*, 256 A.3d 1263, 1272-73 (Pa.Super. 2021) (finding issues regarding goal change moot in light of termination of parental rights); *In re Adoption of A.H.*, 247 A.3d 439, 446 (Pa.Super. 2021) (same), *appeal denied*, 258 A.3d 1144 (Pa. 2021); *Int. of D.R.-W.*, 227 A.3d 905, 917 (Pa.Super. 2020) (same); *see also In re D.K.W.*, 415 A.2d 69, 73 (Pa. 1980) (stating once parental rights are terminated, issues of custody and dependency under Juvenile Act are moot). We therefore dismiss the appeal of the order granting the petition for goal change.

- 13 -

Order involuntarily terminating Mother's parental rights affirmed.

Appeal from order changing Child's permanency goal dismissed.

Judge King joins the memorandum.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2022