J-S20001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: V.B., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: R.B., MOTHER | : : : : : : | |
| | : | No. 438 EDA 2023 |

Appeal from the Order Entered January 20, 2023,
in the Court of Common Pleas of Philadelphia County,
Juvenile Division at No(s):  CP-51-DP-0001079-2022.

BEFORE:   DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED AUGUST 29, 2023**

In this matter, R.B. (Mother) appeals the decision of the Philadelphia Court of Common Peas (the juvenile court), which determined that her 12-year-old daughter V.B. (the Child) was dependent under the Juvenile Act. ***See*** 42 Pa.C.S.A. § 6341.  Mother claims that the decision was based on insufficient evidence, as well as improper hearsay testimony.   In addition to the substantive dependency adjudication, Mother appeals the dispositional portion of the adjudicatory order, which removed the Child from Mother's home.  After careful review, we conclude *inter alia* that the court's admission of impermissible hearsay testimony constituted a harmless error, and we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

By way of factual background, the record indicates that the Philadelphia Department of Human Services (DHS) became involved with the family in early 2022. DHS had received a general protective services report, which referenced the parents' drug use and alleged there was domestic violence in the home. Although DHS ultimately determined these reports were "validated" in May 2022, DHS did not seek an order for protective custody or file a dependency petition.

In November 2022, DHS received another report alleging drug use and domestic violence in the home. This time, DHS filed a dependency petition and sought and obtained an order for protective custody. Pursuant to a safety plan, the Child went to live with a family friend. On January 20, 2023, the juvenile court held a hearing on the dependency petition. The court heard testimony from the DHS social worker who investigated the allegations, the caseworker from the Community Umbrella Agency (CUA), and the CEO of the Child's school. Neither parent appeared for the hearing. The testimony was the subject of frequent objections, mostly for hearsay. The court largely overruled the objections. At the end of the hearing, the court adjudicated the Child dependent and committed the Child to the custody of DHS. Mother timely filed this appeal.[1] The juvenile court authored a Pa.R.A.P. 1925(a) opinion, which largely directs this Court to its reasoning set forth on the record.

_____

[1] Father did not appeal the juvenile court's decision.

Mother raises the following issues for our review, which we reorder for ease of disposition:

1. Did the juvenile court err as a matter of law and abuse its discretion by adjudicating [the Child] to be a "dependent child" pursuant to 42 Pa.C.S.A. § 6302 on hearsay statements in violation of the Juvenile Act, the Pennsylvania Rules of Evidence, and Appellant's right to due process?

2. Did the juvenile court err as a matter of law and abuse its discretion by adjudicating the Child to be a "dependent child" pursuant to 42 Pa.C.S.A. § 6302 in the absence of clear and convincing evidence that [the Child] was presently "without proper parental care and control…as required by law"?

3. Did the juvenile court err as a matter of law and abuse its discretion by committing the Child to the legal custody of [DHS] in the absences of clear and convincing evidence that removal from Mother was clearly necessary?

Mother's Brief at 3 (style adjusted).

Our discussion begins with Mother's claim that the juvenile court committed evidentiary errors. The admission of evidence is within the discretion of the trial court and such decisions will be reversed only if the trial court has abused its discretion. *Interest of I.R.-R.*, 208 A.3d 514, 519 (Pa. Super. 2019) (citation omitted). The Rules of Juvenile Court Procedure provide that in adjudications, each party shall have an opportunity to present evidence subject to the Rules of Evidence. *See* Pa.R.J.C.P. 1406.

"Under the Pennsylvania Rules of Evidence, hearsay evidence is incompetent and inadmissible unless it meets an exception set forth in the

Rules or one prescribed by this Court or statute." ***In re A.J.R.-H.***, 188 A.3d 1157, 1167 (Pa. 2018) (quoting Pa.R.E. 801(c)). "'Hearsay' is 'a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.'" ***Id.*** Hearsay within hearsay – or "double hearsay" as it is sometimes referred – is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule. ***See*** Pa.R.E. 805.

In her first appellate issue, Mother alleges several instances where the juvenile court improperly admitted hearsay evidence:

- The DHS social worker's testimony about what the neighbor told her about the parents' drug use and the existence of domestic violence in the home (***see*** N.T. at 16-18);

- The DHS social worker's testimony that the police department said there were several calls concerning domestic violence in the home (***see*** N.T. at 28);

- The DHS social worker's testimony about how the Child said Father "held her hostage in the home once" (***see*** N.T. at 21); and

- The CUA caseworker's testimony that, according to the Child, Mother said the Child should not speak to the caseworkers (***see*** N.T. at 47-48).

***See generally*** Mother's Brief at 20-23:

We address each instance in turn. In the first instance, the DHS social worker testified that she spoke with Mother's neighbor as part of her

investigation. Over Mother's objection, the caseworker testified about what the neighbor told her:

> DHS social worker: The neighbor stated that there are major drug and alcohol concerns for Mother and Father. She stated that there are domestic violence concerns for Mother and Father. [The neighbor] stated that Father has been seen laying in the street apparent to be dead [*sic*] and they have ran to get [Mother] because he looked dead. And [Mother] basically came out and said, "Oh, I'm going to Narcan you."[2] And he jumped up.

N.T. at 17-18 (footnoted added).

This excerpt contains hearsay within hearsay – that is, the caseworker's testimony concerns what the neighbor said that Mother had stated to Father. As such, each component (Mother's statement and the neighbor's statement) required an exception to the hearsay rule. **See** Pa.R.E. 805 (Hearsay Within Hearsay).

Mother's statement ("I'm going to Narcan you") meets an exception to the hearsay rule. **See** Pa.R.E. 803(25)(A) ("The statement is offered against an opposing party and: (A) was made by the party in an individual or representative capacity"). However, Mother's statement was alleged by the neighbor. As the neighbor did not testify, her statement must fit within its own exception under either Pa.R.E. 803 (Exceptions to the Rule Against

---

[2] Narcan refers to the trademark name for Naloxone, which when administered can reverse the effects of an opioid overdose.

Hearsay – Regardless of Whether the Declarant is Available as a Witness) or Pa.R.E. 804 (Exceptions to the Rule Against Hearsay – when the Declarant is Unavailable as a Witness).

Neither of the proponents of the neighbor's statement (DHS or the Child's GAL), nor the juvenile court addressed whether the neighbor's statement fit within a hearsay exception. In apparent agreement that the neighbor's statement constituted impermissible hearsay, the juvenile court said it would only consider the statement for dispositional purposes and not for the initial question of whether the Child should be adjudicated dependent. *See* N.T. at 17.

Under the Juvenile Act, an adjudicatory hearing has two distinct phases. First, the juvenile court must ascertain, after hearing the evidence on the dependency petition, whether the child is dependent – *i.e.*, without proper parental care or control. *See* 42 Pa.C.S.A. § 6341(a). Second, if the court finds from clear and convincing evidence that the child is dependent, the court shall proceed to make a proper disposition of the case. *See* § 6341(c).[3] Importantly, the Juvenile Act provides for a relaxed evidentiary standard when it comes to the dispositional phase:

> **(d) Evidence on issue of disposition. –**
>
> > (1)(i) In disposition hearings under subsections (b) and (c)[relating to dependency] ***all evidence*** helpful

---

[3] The "disposition" of a dependent child refers to where the child will live, under what conditions, and who will assume physical and/or legal custody. ***See generally*** 42 Pa.C.S.A. § 6351.

in determining the questions presented, including oral and written reports, may be received by the court and relied upon to the extent of its probative value **even though not otherwise competent** in the hearing on the petition.

[...]

(2) The parties or their counsel shall be afforded an opportunity to examine and controvert written reports so received and to cross-examine individuals making the reports. Sources of information given in confidence need not be disclosed.

42 Pa.C.S.A. § 6341(d) (emphasis added).

When the juvenile court explained that it would admit the hearsay testimony for dispositional purposes only, the parties' respective counsel sought clarification:

| [Father's] counsel:[4] | I just want to complete the record, Your Honor. I understand that it's for the dispositional purposes, but we are not at disposition. We are not at adjudication and if that information comes in you are Judge and jury. That is prejudicial. |
|---|---|
| The court: | Understood. I'll use it for dispositional purposes as you know we do both adjudication and disposition in the same hearing. I will be able to [parse] out the information that's received. |

_____

[4] According to Mother's Brief, the transcript of this exchange mistakenly refers to Mother's counsel, when it should have referred to Father's counsel. **See** Mother's Brief at 21, n.5 (citing N.T. at 17, lines 11-15).

N.T. at 17 (footnoted added).

We share Mother's concern that acceptance of inadmissible hearsay during the adjudicatory phase is problematic, even if the same testimony may be considered during the dispositional phase. Still, we must recognize that our trial judges are perfectly capable of entertaining a thought for one purpose, without accepting it for another. Our Rules of Evidence require triers-of-fact to do just that: "There are many situations in which evidence of a statement is offered for a purpose other than to prove the truth of the matter asserted." *See* Pa.R.E. 801 – Comment. Although it cannot be the case that the disposition exception swallows the entirety of the Rules of Evidence, here, Mother's challenge is unavailing. For one, Mother does not raise the issue of where this line must be drawn. She only alleges that this testimony constituted impermissible hearsay for adjudicatory purposes. Evidently, no one disagreed, and the court did not consider it for that reason. More importantly, to remove all doubt as to whether the court considered the hearsay for improper reasons, we note that the court's dependency adjudication is supported by independent, competent evidence concerning Mother's drug use, as we explain *infra.* Accordingly, Mother's claim merits no relief on this point.

Mother's next example of the juvenile court's admission of impermissible hearsay concerns the allegation that there was domestic violence in the home. During Mother's cross-examination, the following exchange took place:

| | |
|---|---|
| Mother's counsel: | So in the previous investigation there was information about some arguments in the home. Is that accurate? |
| DHS social worker: | Some domestic violence. And I also called the police district that stated there were several calls – |
| *Father's counsel*: | Objection. Hearsay. |
| The court: | Overruled. She opened the door. |
| DHS social worker: | I called the police – |
| Father's counsel: | I didn't open the door. |
| The court: | Overruled. |
| DHS social worker: | I called the police district and they stated there were several calls in reference to domestic violence and a protection order. |

N.T. at 28 (emphasis added).

In its Brief, DHS argues that Mother failed to preserve this claim when she did not object at trial; DHS further argues that Father's objection does not preserve Mother's claim. *See* DHS's Brief at 16-17, n.1. We agree.

With respect to evidentiary rulings, "[e]rror may not be predicated upon a ruling that admits evidence unless a timely objection, motion to strike, or motion *in limine* appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context." *Commonwealth v. Parker*, 104 A.3d 17, 28 (Pa. Super. 2014) (citing Pa.R.E. 103(a)(1)); *see also Amato v. Bell & Gossett*, 116 A.3d 607, 625 (Pa. Super. 2015) (holding that the appellant failed to preserve hearsay objection where only counsel for

the co-defendant objected). Issues not raised in the lower court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a).

Instantly, Mother did not object to the DHS social worker's testimony, nor did she object elsewhere in her cross-examination of the social worker, who proceeded to testify that there were at least six calls made over the course of 2022. **See generally** N.T. at 29-31. We need not address whether this admission of testimony constituted impermissible hearsay, as Mother waives her claim on this point.

The final two claims of impermissible hearsay concern the Child's statements. The Child did not testify at the hearing, nor did the juvenile court conducted an *in camera* interview of the Child. At the hearing, the Child's counsel elicited testimony that it was the Child's desire to return to her parents' care. Although the DHS social worker testified that this was indeed the Child's preference, she couched the Child's preference by alleging that the Child also said somewhat contradictory statements:

| Child's counsel: | So [the Child] doesn't have any concerns for safety in the home. Is that correct? |
|---|---|
| DHS social worker: | No, but she did mention that dad held her hostage in the home once. |
| Child's counsel: | Okay. |
| Mother's counsel: | Objection. |
| Child's counsel: | [The Child] does still wish to return? |
| Mother's counsel: | Objection. |
| DHS social worker: | Yes. |

- 10 -

| The court: | Overruled. |

N.T. at 21-22.

Similarly, the CUA caseworker testified that the Child preferred to return home, but she also cast doubt on the Child's preference:

| Child's counsel: | And what does she say? |
| CUA caseworker: | [The Child] says she wants to go home. |
| Child's counsel: | Okay. And have you asked her if she has any concerns about returning home? |
| CUA caseworker: | I have. |
| Child's counsel: | Okay. And what does she state? |
| CUA caseworker: | [The Child] said she doesn't have any concerns, but [the Child] also stated that her Mother told her not to trust me and [the DHS social worker]. |
| Mother's counsel: | Objection. |
| The court: | Overruled. |
| CUA caseworker: | She told me that her Mother said not to address me and [the DHS social worker] and that we wanted to keep her out of the home. And she said that her Mother told her not to tell us anything. |
| Mother's counsel: | Objection. |
| The court: | Overruled. |

*Id*. at 47-48.

The second of these excerpts regarding the Child also contains hearsay within hearsay – although Mother's statement would meet the party opponent

exception. *See* Pa.R.E. 803(25) (discussed *supra*). However, as we explained above, *each part* of the combined statement must conform with an exception to the rule. Pa.R.E. 805. The juvenile court overruled the objections, but this time the court did *not* indicate that it would only consider the hearsay testimony for dispositional purposes. In fact, the court held no discussion as to whether the Child's statements even constituted hearsay – *i.e.*, that the statement was not offered for the *truth* of the matter asserted, but for some other reason – or whether the statement fit under an enumerated hearsay exception. *See* 801; *see also Interest of I.R.-R.*, 208 A.3d at 519 (citations omitted).[5] In its Pa.R.A.P. 1925(a) opinion, the juvenile court does not explain its evidentiary rulings. Thus, we agree with Mother's claim that these two excerpts regarding the Child's statements constituted inadmissible hearsay. However, this does not end our analysis.

Next, we must consider whether the juvenile court's evidentiary error necessitates a new hearing or whether the error is harmless.[6] How appellate courts apply the harmless error doctrine depends on the type of case. *See,*

_____

[5] A child's out-of-court statement may nevertheless be admissible in certain situations, none of which are present in this case. *See* 42 Pa.C.S.A. §§ 5985.1 ("Admissibility of certain statements"), 5986 ("Hearsay").

[6] Notably, not all errors are subject to the harmless error doctrine. "A structural error is defined as one that affects "the framework within which the trial proceeds, rather than simply an error in the trial process itself." *In re Adoption of L.B.M.*, 161 A.3d 172, 183 (Pa. 2017) (citations omitted). "Structural errors are not subject to harmless error analysis." *Id.* (Citations omitted). Any structural error requires a new trial. Here, the issue is an evidentiary ruling, and thus a harmless error analysis is appropriate.

- 12 -

*e.g., Commonwealth v. Burno*, 154 A.3d 764, 796 (Pa. 2017) (holding that the harmless error analysis in a criminal case requires the following: (1) The error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.); *cf. Interest of J.M.G.*, 229 A.3d 571, 568 (Pa. 2020) ("In relation to civil cases, [our Supreme] Court explained that the harmless error doctrine is subsumed in a trial court's two-step review of motions for new trial.") (citing *Harman ex re. Harman v. Borah*, 756 A.2d 1116, 1122 (Pa. 2000)). [7]

_____

[7] In *J.M.G.*, the High Court explained the two-step process as follows:

> First a [trial] court must review whether an error occurred, and secondly whether the error warrants a new trial. The harmless error doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial ...; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake. Appellate review of a trial court's decision to grant or deny a motion for new trial involves a similar two-stage analysis. First, the appellate court must examine the decision of the trial court that a mistake occurred. ... If the appellate court agrees ... that a mistake occurred, ... [t]he appellate court must then determine whether the trial court abused its discretion in ruling on the request for a new trial.

*(Footnote Continued Next Page)*

- 13 -

As far as we can discern, our Supreme Court has not addressed how the harmless error doctrine is applied to a finding of dependency. However, our Supreme Court has address harmless error in termination cases. The High Court explained that "the standard for finding harmlessness in a termination case requires us to conclude that the evidentiary error could not have had any impact upon the orphans' court's decision." *In re A.J.R.-H.*, 188 A.3d 1157, 1175 (Pa. 2018) (citing *In re Sanders Children*, 312 A.2d 414, 417 (Pa. 1973)). In a termination proceeding, the harmless error standard is seemingly heightened, "because of the serious impact attending the termination of parental rights," and because "it is important that a judicial decree extinguishing such rights be based solely on competent evidence." *A.J.R.-H.*, 188 A.3d at 1171 (citing *In re Sanders Children*, 312 A.2d at 417). Using *In re Sanders Children* as an example, the High Court in *A.J.R.-H.* explained a single (and relatively small) mistake could still warrant a reversal:

> Notably, in *In re Sanders Children*, "the contested evidence … constituted only a minor part of [the agency's] case," consisting of a testimony regarding a single hearsay

---

*J.M.G.*, 229 A.2d at 586 (citing *Harman*, 756 A.2d at 1122-23) (internal quotations omitted).

It is less clear how the harmless error standard applies to domestic relations cases, where there is no post-trial motions procedure. *But see J.C. v. K.C.*, 179 A.3d 1124, 1129-30 (Pa. Super. 2018) (holding that the trial court's misapplication of the Uniform Child Custody Jurisdiction and Enforcement Act did not contribute to the court's decision, and because the moving party was not prejudiced) (citing *Harman*, *supra*).

> document, but this Court nonetheless vacated the decree because of the mere possibility that the evidence could have impacted the decision of the orphans' court.

*Id.* (citing *In re Sanders Children*, 312 A.2d at 417).

Unlike a termination decree, a dependency adjudication does not extinguish parental rights. Thus, a lesser standard for harmless error may apply in dependency cases. However, we need not decide that here, because even if we employed the more exacting termination standard, we would still conclude that the error was harmless.

In applying that standard to the instant case, we must discern whether the juvenile court's evidentiary error – *i.e.*, the admission of the Child's statements – had ***any*** impact on its decision. Significantly, we recognize that the harmless error standard must not be confused with the sufficiency of evidence standard. ***A.J.R.-H.***, 188 A.3d at 1175 (citing ***In re Sanders Children***, 312 A.2d at 417). At this juncture, we are not deciding whether there was other properly admitted evidence to support a dependency adjudication. Instead, we look to the reasons for the court's decision, and then determine whether the hearsay statements impacted that decision.

The juvenile court determined that the Child was dependent for two reasons: the parents' substance abuse as well as the allegations of domestic violence in the home. ***See*** N.T. at 63. The record contains competent evidence to support each of these two reasons. As noted above, Mother's cross-examination elicited testimony that there had been at least a half dozen calls to the local police station regarding domestic violence in the home. ***See***

- 15 -

*id.* at 28-31. As for the evidence of Mother's drug use, competent evidence supports this finding:

| DHS counsel: | Did you speak with [Mother] at that time? |
|---|---|
| DHS social worker: | Yes |
| DHS counsel: | And what did you learn when speaking with [Mother]? |
| DHS social worker: | Mother admitted to having a substance abuse history. She changed her last usage time, like several times. She initially stated that she last used ten years ago. Then she stated four years ago. Then she stated two years ago back in May of 2022 when she had the prior report. |
| Mother's counsel: | Objection. Is this something that [Mother] said to you or is this something that was in the prior report because that would – I'm going to object to that. |
| The court: | I believe the witness just testified that Mother admitted to substance abuse use. Kept changing the dates of her last use. So these are conversations that this investigator had with your client. |

*Id.* at 15-16.[8]

Later in the hearing, Mother's counsel elicited testimony that Mother had last tested positive in May 2022, when DHS had previously investigated the

_____

[8] Even though the testimony of Mother's admission to drug use was also hearsay, Mother's admission falls squarely within the party opponent exception. *See* Pa.R.E. 803(25).

family. *See id.* at 27. Mother also elicited testimony that Mother had been prescribed suboxone for a decade. *See id*. at 51.

Thus, the Child's inadmissible statements did not concern either Mother's substance abuse, or the existence of domestic violence in the home. To be sure, we must note that when the juvenile court stated its reasons for the adjudication and disposition, the court said in the same breath that it was concerned for the Child's mental health. *See id.* at 63. However, this concern does not stem from the Child's inadmissible hearsay statements, but from the testimony of James Rodgers, the CEO of the Child's school. *See generally* N.T. at 31-40.[9] Mr. Rodgers testified the school would like to have the Child evaluated for special education services based on "ED," or "emotional disturbance." *See id.* at 34, 36.

In short, although we agree with Mother that the juvenile court erred when it admitted the Child's statements, we conclude that the error is harmless because the statements had no impact on the court's decision to find the Child dependent. Although it is unclear precisely how the harmless error standard should apply to dependency cases, the court's error would be

_____

[9] Mr. Rodgers appeared at the hearing "out of concern for [the Child]." *See* N.T. at 32. Although Mother objected to Mr. Rodgers' testimony for lack of notice, Mother does not raise that claim on appeal. In fact, Mother relies on Mr. Rodgers' testimony to argue, in her third issue, that the court abused its discretion when it removed the Child from the home. *See* Mother's Brief at 26. The court admitted Mr. Rodgers' testimony for dispositional purposes only.

harmless even under the stringent termination test. Thus, Mother's first appellate issue merits no relief.

In her second appellate issue, Mother argues that the juvenile court's adjudication of the Child was based on insufficient evidence. *See generally* Mother's Brief at 13-19. To adjudicate a child dependent, the court must determine, by clear and convincing evidence, that the child:

> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.

42 Pa.C.S.A. § 6302(1).

"Clear and convincing evidence" is defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Interest of L.V.*, 209 A.3d 399, 416 (Pa. Super. 2019) (citation omitted).

> In accordance with the overarching purpose of the Juvenile Act "[t]o preserve the unity of the family wherever possible," *see* 42 Pa.C.S.A. § 6301(b)(1), "a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately available. This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child."

*L.V.*, 209 A.3d at 416 (internal citations omitted).

The standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the juvenile court if they are supported by the record; but it does not require the appellate court to accept the juvenile court's inferences or conclusions of law. **I.R.-R.**, 208 A.3d at 519 (citing **In re R.J.T.**, 9 A.3d 1179, 1190 (Pa. 2010)).

On appeal, Mother argues that the three causes for the Child's dependency (housing, substance abuse, and domestic violence) lacked evidentiary support in the record. Immediately, we dismiss Mother's claim regarding housing as a strawman argument. By the end of the hearing, all agreed that Mother's housing was appropriate. Although the electric had been turned off, it had been quickly restored. Moreover, the DHS caseworker testified that the housing was otherwise suitable – the child had a bed, there was food in the refrigerator, and there were no structural problems or issues with the other utilities. Finally, when the court announced its decision from the bench, the court said plainly: "The issues here are far more concerning than electricity." N.T. at 63.

As for the allegations of substance abuse and domestic violence, the essence of Mother's argument is that nothing really changed between the last DHS investigation in May 2022 and the instant investigation in November 2022, which led to the Child's adjudication. Although Mother admitted to using drugs in May 2022, which was known to DHS during the last investigation, Mother maintains that she has since followed her suboxone regiment, and she cites the testimony indicated that she has never appeared under the influence.

As for the domestic violence concern – specifically, the existence of over a half dozen calls to the police station – Mother argues that the caseworker could not testify with specificity as to the dates of those calls, nor what was said in the calls to the police. Mother maintains that there was no new evidence of domestic violence either.

After review, we discern no abuse of discretion. We understand Mother's argument that if nothing new occurred since the last investigation, which did not result in a dependency adjudication, then the current investigation should not result in one either. While this argument might undercut DHS's rationale that it has grave concerns for the Child's safety, Mother's argument does not remove those concerns altogether. Whether the calls made to the police station occurred before or after the last investigation, the fact remains that the police were called over six times.

We certainly do not downplay the seriousness of domestic violence, but the more deeply rooted evidence of dependency was Mother's admission that she tested positive in May 2022, during the prior investigation, coupled with her evasiveness about her drug history during the current investigation. The Child's GAL accurately explained the concern in her closing argument:

> The GAL: My main concern is that [Mother] is refusing to sign any kind of releases. If she's in a suboxone program and if she's active in it that's because she goes there daily or however many times, three times a week, so that she can get suboxone. It doesn't mean that she's getting therapy there or that she's resolved any of her drug and alcohol problems.

> If she had signed the releases and we had the paperwork, and it was validating that she was [in] the program we wouldn't be here today. So that's a concern.

N.T. at 58.

We clarify that a parent's prescribed use of suboxone is not *per se* evidence that a child is without proper care. In fact, a parent's proper use of drug treatment medications could be evidence of the opposite proposition. Nevertheless, courts should not have to close their eyes as to fact that suboxone is prescribed to treat opioid dependence. Whether Mother relapsed again or whether she is participating in a proper drug treatment program are relevant questions to the larger issue of whether a child is without proper parental care. The juvenile court heard testimony that Mother would not say when she last used or whether she was still enrolled in an opioid treatment program.

| | |
|---|---|
| CUA caseworker: | I talked to [the parents] about getting records so we can prove that these issues did not exist. They refused. Both parents refused to sign any ROI's. They refused to sign the safety plan with me. |
| | I've met them multiple times in their home. It is an in-home safety case, so I do meet with them weekly. |
| | I've provided bus passes for them to go to their program and obtain records and also to make it to court today. |
| | [...] |
| Counsel for DHS: | Okay. Alright. So you said you had an opportunity to discuss the issues listed |

in, sorry, the petition, [domestic violence] and substance abuse issues. When you speak with [Mother] about those issues what is typically her response?

CUA Caseworker: She denies it. And she says that she refuses to sign any releases because she does not want CUA or DHS digging up her past from twelve years ago. And I was adamant that we would be looking at the current year. At the time it was 2022. And I told her we would be looking at, you know, closer to this time. And she was adamant that we would not. And she stated that someone else, she didn't specify who, had already brought up things to keep us from her child. Things that happened twelve years ago. And she just refused.

So I asked her if she could bring her own documents, if she didn't feel comfortable with me obtaining them myself maybe she could go and get them and present them to me. And she said she would, but she has not.

N.T. at 43-44

Mother did not appear at the adjudicatory hearing to refute the allegation she was being evasive about her history. The juvenile court had the discretion to find the caseworker's testimony credible, to make a negative inference against Mother, and to conclude that the Child's safety was at risk. *See L.V.*, 209 A.3d at 411 ("The [juvenile] court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility

determinations and resolve conflicts in the evidence.") (Citations omitted).

Mother's second appellate issue merits no relief.

In her third appellate issue, Mother argues that even if sufficient evidence existed to adjudicate the Child dependent, the juvenile court abused its discretion when it subsequently removed the Child from Mother's home.

In *In re D.A.*, *A Minor*, 801 A.2d 614 (Pa. Super. 2002) (*en banc*), this Court explained:

> If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or a private or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S.A. § 6351(a).

*Id.* at 617 (citation omitted); *see also In re M.L.*, 757 A.2d 849, 850-51 (Pa. 2000).

However, even after a child has been adjudicated dependent, a court may not separate that child from the parent unless it finds that the separation is clearly necessary. *Interest of N.S.*, 237 A.3d 546, 551 (Pa. Super. 2020) (citing 42 Pa.C.S.A. § 6301(b) (relating to the Juvenile Act's purpose to keeping families together) (mentioned *supra*)). Such necessity is implicated where the welfare of the child demands that they be taken from their parents' custody. *N.S.*, 237 A.3d at 551 (citation omitted). "Clear necessity" is established when the court determines that alternatives are not feasible. *Id.* (citing *A.N. v. A.N.*, 38 A.3d 326 (Pa. Super. 2012)).

In support of her argument, Mother cites testimony: that the home was suitable; that she visited the Child and brought her food following the Child's safety plan placement with the family friend; that she made an appointed to have the Child tested for ADHD; and that the Child was a good student.

After review, we discern no abuse of discretion. Although Mr. Rodgers testified that the Child was doing well academically, the CEO evidently took it upon himself to attend the dependency hearing out of concern for the Child's emotional well-being. Specially, Mr. Rodgers' concern was that he could not obtain parental consent to have the Child evaluated for special education, because Mother was unresponsive. *See* N.T. at 34. Mr. Rodgers testified that the school had provided the Child's temporary placement caregiver with a school uniform, toiletries, and a gift card to buy groceries. *Id*. at 35.

More to the point, the juvenile court simply could not verify that the Child would be safe in Mother's home. As the record stood, however, no one could vouch for the Child's well-being; no one could testify that alternatives were feasible. Parents' distrust of a child protective services agency is not uncommon. We do not suggest that a parent must admit to the allegations of the child protective services report, or that a mere denial of the allegations constitutes grounds to remove a child. But where a child has been adjudicated dependent, and the court has no evidence to gauge whether the child would be safe in the home or whether alternatives might be feasible (*i.e.*, keeping the Child in the home but with additional services), then "clear necessity" is established. Mother's final contention is without merit.

To conclude: regarding Mother's cited examples of impermissible hearsay testimony, we agree that the admission of testimony regarding the Child's statements constituted an error. However, the error was harmless. The record contains sufficient evidence that the Child was dependent. The juvenile court did not abuse its discretion when it removed the Child from the home, following the adjudication.

Order affirmed. Jurisdiction relinquished.


JUDGE DUBOW did not participate in the consideration or decision of this case.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/29/2023