**[J-10-2018] [MO: Donohue, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


| | |
|---|---|
| IN RE: A.J.R.-H. AND I.G.R.-H. | : No. 38 MAP 2017 |
| | : |
| | : Appeal from the Order of Superior |
| APPEAL OF: K.J.R., MOTHER | : Court at No. 1564 MDA 2016 dated |
| | : May 1, 2017 Affirming the Decree of |
| | : the Berks County Court of Common |
| | : Pleas, Orphans' Court, dated August |
| | : 23, 2016 at Nos. 84695 and 84696. |
| | : |
| | : ARGUED: March 6, 2018 |

## CONCURRING OPINION

**JUSTICE BAER**                                    **DECIDED: July 18, 2018**

I join the Majority's well-reasoned conclusion that the orphans' court erred by admitting into evidence the 167 exhibits offered by Berks County Children and Youth Services ("CYS") at the hearing to terminate involuntarily the parental rights of K.J.R. ("Mother") to her daughters A.J.R.-H and I.G.R.-H. As the Majority adeptly explains, the exhibits were hearsay that failed to satisfy the business records exception to the prohibition against the admission of hearsay evidence. Majority Opinion at 15-22. In addition, I concur with the Majority's determination that the orphans' court's error was harmful to Mother, necessitating a new hearing to adjudicate CYS's petition to terminate Mother's parental rights. *Id.* at 22-30. However, I write separately because I would employ a different harmless error standard than the standard utilized by the Majority when evaluating the error that occurred during the termination hearing.

Regarding the standard that an appellate court should apply when determining whether an error that occurred during a termination proceeding was harmless, the Majority states that in *In re Sanders Children*, 312 A.2d 414, 417 (Pa. 1973), this Court

held that where "an erroneous evidentiary ruling could potentially have affected the decision to terminate a parent's rights to his or her child, an error is not harmless and the parent is entitled to a new hearing and decision."[1]  Majority Opinion at 22.  I respectfully disagree with the Majority that the Court announced a harmless error standard in *In re Sanders Children* which we are bound to follow.  To be sure, in that opinion, the Court determined that the erroneous admission of evidence during the termination hearing required a new termination proceeding.  However, in my view, the Court did not articulate a distinct harmless error standard for purposes of evaluating errors that occur during termination proceedings.[2]  Moreover, my research indicates that this Court has never articulated such a standard.

In addressing whether the orphans' court committed a harmful error in this case, Mother and CYS agree as to what they believe to be the appropriate harmless error standard in the termination setting.  However, without analysis or explanation, they both

---

[1] For this proposition, the Majority cites to the following portion of *In re Sanders Children*:

> While the contested evidence discussed above constituted only a minor part of appellee's case, we cannot say that without this evidence the lower court would have reached the same result.  Because of the serious impact attending the termination of parental rights, it is important that a judicial decree extinguishing such rights be based solely on competent evidence. In light of appellants' significant evidence of self-improvement, it is quite possible that the incompetent evidence accepted below provided the 'swing factor' in that court's determination.  Appellants are entitled to a hearing and decision free from such taint.  Hence, we will remand this matter to the court below for the purpose of conducting a proceeding consistent with this opinion.

*In re Sanders Children*, 312 A.2d at 417.

[2] The Majority suggests that I am advocating for the Court to overrule *sua sponte In re Sanders Children, supra.*  Majority Opinion at 22-23 n.19.  Respectfully, I am in no way making such an argument.  Rather, as stated above, I am of the view that *In re Sanders Children* does not constitute binding precedent as to how appellate courts should evaluate errors that occur in termination proceedings.

simply invoke the generic civil "harmless error" standard and the more specific criminal "harmless error" standard. Mother's Brief at 22; CYS's Brief at 16-17. The civil "harmless error" standard cited by the parties states, "To constitute reversible error, a ruling on evidence must be shown not only to have been erroneous but harmful to the party complaining. An evidentiary ruling which did not affect the verdict will not provide a basis for disturbing the jury's judgment." *Hart v. W.H. Stewart, Inc.*, 564 A.2d 1250, 1252 (Pa. 1989) (plurality) (citations omitted). The criminal "harmless error" standard is as follows:

> Harmless error exists where:
>
> (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Burno*, 154 A.3d 764, 796 (Pa. 2017) (citations omitted). As I will discuss in more detail below, given the significant rights at stake in termination proceedings, I believe that the Court should adopt a modified version of the criminal "harmless error" standard for purposes of evaluating whether an error that occurred in a termination proceeding requires an appellate court to vacate a decree involuntarily terminating parental rights and remand the case for a new hearing.

Important competing interests and rights are in play when an appellate court concludes that an error occurred during a criminal trial. On the one hand, severe consequences flow from a criminal conviction and sentence. For example, when a criminal conviction leads to a sentence of incarceration, the defendant is substantially deprived of his constitutionally recognized interest in liberty. *See, e.g., Meachum v. Fano*, 427 U.S. 215, 224 (1976) (explaining that, "given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine

him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution"). Thus, when an error adversely affects a fact-finder's decision to convict a defendant, our system of justice mandates that the defendant receive the fair trial to which he is entitled. *See, e.g., Commonwealth v. Story*, 383 A.2d 155 (Pa. 1978) (awarding a defendant a new trial because the trial court improperly allowed the Commonwealth to introduce into evidence harmful testimony regarding the victim's reputation). On the other hand, however, there is a societal interest in the finality of criminal proceedings. *Commonwealth v. Sam*, 952 A.2d 565, 576 (Pa. 2008). Consequently, "[i]f a trial error does not deprive the defendant of the fundamentals of a fair trial, his conviction will not be reversed." *Commonwealth v. Wright*, 961 A.2d 119, 135 (Pa. 2008).

Due to these competing interests and rights, when an appellate court concludes that an error was committed during the prosecution of a defendant, it is necessary for the court to assess whether the error harmed the defendant to such a degree that he was deprived of a fair trial. Given the importance of such an assessment, this Court endeavored to articulate a clear standard for determining whether an error was harmless in *Commonwealth v. Story, supra.*

In so doing, the *Story* Court initially explored the proper "standard of proof" that a court should apply when examining the harmfulness of an error that was committed in a criminal trial.[3] *Story*, 383 A.2d at 162-64. We concluded that the proper standard of proof was "beyond a reasonable doubt" because "this standard is commensurate with the standard of proof in criminal trials that an accused cannot be convicted unless the trier of

---

[3] Generally speaking, "standard of proof" refers to the level of proof required in a particular case, such as "beyond a reasonable doubt," "clear and convincing," and "preponderance of the evidence." *See Commonwealth v. Maldonado*, 838 A.2d 710, 714-15 (Pa. 2003) (explaining the concept of "standard of proof").

fact is convinced beyond a reasonable doubt that the accused is guilty as charged." *Id.* at 162. The Court further noted that "the burden of establishing that the error was harmless beyond a reasonable doubt rests with the Commonwealth."[4] *Id.* at n.11.

The *Story* Court then turned its attention to addressing the definition of harmlessness. Although the Court adopted the general "standard that an error cannot be held harmless unless the appellate court determines that the error could not have contributed to the verdict," it observed that "the principle that an error is harmless if it did not contribute to the verdict only sets the stage for the harmless error inquiry." *Id.* at 164. Accordingly, the Court sought to provide a thorough standard to apply when evaluating the harmfulness of a trial error. *Id.* at 164-69.

The Court then discussed, in detail, circumstances in which an appellate court can deem an error to have been harmless and, thus, should not disturb a defendant's conviction or sentence. As this Court recently explained,

> [t]his lengthy discussion [in *Story*] has been abbreviated and repeatedly articulated in subsequent cases as follows:

---

[4] Because the Commonwealth carries this burden on appeal, I believe that the Court intended to require the Commonwealth to convince or persuade the appellate court, by way of argument in its appellate brief, that an error was harmless beyond a reasonable doubt. *See Commonwealth v. Hicks*, 156 A.3d 1114, 1140 n.1 (Pa. 2017) (Baer, J., Concurring) ("While much of the case law in this regard states that the Commonwealth has a 'burden of proof,' in my view, it is more accurately described as a burden of persuasion."). This burden was placed on the Commonwealth based primarily upon the "common-law harmless-error rule [that] put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment." *Chapman v. California*, 386 U.S. 18, 24 (1967).

I further observe that, in *Hicks*, I acknowledged that there is tension in the law as to whether an appellate court can raise the issue of harmless error *sua sponte* in a criminal case when the Commonwealth does not present argument on the issue. *Hicks*, 156 A.2d at 1140. I have taken the position that, "while ordinarily the Commonwealth has the burden of persuasion when it asserts that a particular error was harmless, *sua sponte* invocation of the harmless error doctrine is not inappropriate as it does nothing more than affirm a valid judgment of sentence on an alternative basis." *Id.* (footnote omitted).

Harmless error exists if the state proves either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Fulton*, 179 A.3d 475, 493 (Pa. 2018).

In summary, the *Story* Court concluded that, when an appellate court determines that an error occurred during a criminal trial, the Commonwealth bears the burden of persuading the court beyond a reasonable doubt that the error could not have contributed to the verdict. The Commonwealth must concentrate its argument on demonstrating that the error in question meets one or several of the three prongs of the *Story* standard. If an appellate court determines that the Commonwealth has met its burden, then the court should deem the error harmless. However, if the court concludes that the Commonwealth failed in this regard, then it should grant the defendant a new trial.

Turning now to the termination of parental rights, just like in a criminal appeal, important competing interests and rights are in play when an appellate court concludes that an error occurred in a proceeding that culminated in the termination of a parent's rights. For the parent, the trial court's decree permanently extinguishes the fundamental rights that the parent enjoyed with respect to her child. *See, e.g.*, *Hiller v. Fausey*, 904 A.2d 875, 883 (Pa. 2006) (explaining that the United States Supreme Court has "recognized the existence of a constitutionally protected right of parents to make decisions concerning the care, custody, and control of their children"). Thus, when an error negatively impacts a court's decision to terminate parental rights, our system of justice affords the parent a new hearing. *See, e.g.*, *In re Sanders Children*, *supra*.

However, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly." *In re T.S.M.*, 71 A.3d 251, 269

(Pa. 2013). Recognizing this reality, our society strives "to expedite children's placement in permanent, safe, stable, and loving homes." *Id.* Consistent with these goals, appellate courts should affirm decrees terminating parental rights when non-prejudicial errors occur during termination proceedings.

Given the high stakes at issue when a court terminates parental rights, it is incumbent for this Court to provide to the bench and bar a more focused standard for examining whether an error that occurred during a termination hearing was harmless. In my view, the paradigm employed in *Story* provides an appropriate starting point for courts to assess whether an error that occurred during a termination proceeding was harmless. Accordingly, utilizing *Story* as a springboard, I set forth below what I believe to be an appropriate harmless error standard for purposes of appeals from decrees that terminate parental rights.

With respect to the proper standard of proof, it is well-settled that, "in a proceeding to involuntarily terminate parental rights, the burden of proof is upon the party seeking termination to establish by 'clear and convincing' evidence the existence of grounds for doing so." *Matter of Adoption of G.T.M.*, 483 A.2d 1355, 1356 (Pa. 1984) (citing, *inter alia*, *Santosky v. Kramer*, 455 U.S. 745 (1982)). Accordingly, I would employ the "clear and convincing" standard of proof for purposes of a harmless error analysis in the termination setting. Further, consistent with the principle that the beneficiary of the error bears the burden of establishing that the error caused no injury, *supra* at 5 n.3, the petitioning party in termination cases, including a county agency such as CYS, should

generally carry the requisite burden of persuading the appellate court that any trial error was harmless.[5,6]

As to the exact harmless error test to apply in the termination context, I believe that a slightly modified version of the three areas of inquiry provided in *Story* in criminal cases offers a suitable framework by which an appellate court can measure whether a trial error adversely impacted the fact-finder's conclusion that a parent's rights should be terminated. *See Story*, 383 A.2d at 164 (stating that the "principle that an error is harmless if it did not contribute to the verdict only sets the stage for the harmless error inquiry"). Specifically, harmless error exists in the termination setting if the petitioning party adequately demonstrates that: (1) the error did not prejudice the parent or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence that termination of parental rights was proper was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the fact-finder's determination.

Applying this test to the matter *sub judice*, I conclude that CYS has failed to meet its burden of establishing that the orphans' court's error was harmless. As noted above, CYS invokes the above-stated criminal harmless error test. CYS's Brief at 16-17. Yet, CYS incorrectly suggests that it is Mother's burden to prove that she was harmed by the

---

[5] In Pennsylvania, a petition to terminate involuntarily parental rights can be filed by: (1) a parent when termination is sought with respect to the other parent; (2) an agency; (3) a person having custody or standing *in loco parentis* of a child and who has filed a report of intention to adopt the child; and (4) an attorney representing a child or a guardian *ad litem* representing a child who has been adjudicated dependent. 23 Pa.C.S. § 2512(a).

[6] Consistent with my position in *Hicks, supra* at 5 n.3, this rule would be flexible, allowing appellate courts to raise the issue of harmless error *sua sponte*.

court's error. *See, e.g., id.* at 17 ("Mother has failed to identify how the admission caused harm."). Further, although CYS baldly asserts that the error was harmless under all three areas of inquiry provided in *Story, id.* at 18-19, its cursory argument focuses primarily on its view that the properly admitted and uncontradicted evidence that termination of parental rights was proper was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the orphans' court's decision, *see id.* at 18 ("Accordingly, [CYS] submits that the non-hearsay testimony of Ms. Karlunkas, Ms. Kauffman-Jacoby and Ms. Radcliffe alone are sufficient to warrant the termination of Mother's parental rights.").

However, the Majority's painstaking summary of the record belies CYS's position, as the prejudicial effect caused by the erroneous admission of the 167 exhibits is pervasive. Majority Opinion at 22-30. Indeed, the Majority Opinion cogently demonstrates that the error in this case could not be deemed harmless under any of the prongs of the *Story* harmless error analysis, as it is manifest that "the inadmissible exhibits provided the foundation for the orphans' court to find clear and convincing evidence in support of termination under subsections (a) and (b) of the termination statute." *Id.* at 29. For these reasons, I would: (1) vacate the Superior Court's judgment; (2) vacate the trial court decrees terminating Mother's rights; and (3) remand the matter for a new hearing on CYS's petition to terminate Mother's parental rights.