**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: G.E., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 96 WDA 2025 |

Appeal from the Order Entered January 7, 2025
In the Court of Common Pleas of Clarion County Juvenile Division at
No(s): CP-16-DP-0000020-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: L.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 97 WDA 2025 |

Appeal from the Order Entered January 7, 2025
In the Court of Common Pleas of Clarion County Juvenile Division at
No(s): CP-16-DP-0000021-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: A.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: T.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 98 WDA 2025 |

Appeal from the Order Entered January 7, 2025
In the Court of Common Pleas of Clarion County Juvenile Division at
No(s): CP-16-DP-0000022-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: G.R.E., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |

J-S24002-25

|                                   |   |                                   |
|-----------------------------------|---|-----------------------------------|
| APPEAL OF: T.P., MOTHER           | : |                                   |
|                                   | : |                                   |
|                                   | : | No. 100 WDA 2025                  |

Appeal from the Order Entered December 30, 2024
In the Court of Common Pleas of Clarion County Orphans' Court at
No(s):  190 OC 2024

|                                   |   |                                   |
|-----------------------------------|---|-----------------------------------|
| IN THE INTEREST OF: A. D.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|                                   | : |                                   |
| APPEAL OF: T.P., MOTHER           | : |                                   |
|                                   | : |                                   |
|                                   | : | No. 101 WDA 2025                  |

Appeal from the Order Entered December 30, 2024
In the Court of Common Pleas of Clarion County Orphans' Court at
No(s):  No. 188 OC 2024

|                                   |   |                                   |
|-----------------------------------|---|-----------------------------------|
| IN THE INTEREST OF: L.V.A.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|                                   | : |                                   |
| APPEAL OF: T.P., MOTHER           | : |                                   |
|                                   | : |                                   |
|                                   | : | No. 102 WDA 2025                  |

Appeal from the Order Entered December 30, 2024
In the Court of Common Pleas of Clarion County Orphans' Court at
No(s):  No. 189 OC 2024


BEFORE:  NICHOLS, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: October 22, 2025**

Appellant T.P. (Mother) appeals from the orders changing the dependency goals of her children to adoption and involuntarily terminating her parental rights pursuant to the petitions of Appellee Clarion County Children and Youth Services (Agency).[1] We vacate the termination of parental rights (TPR) orders and remand for a new TPR hearing consistent with this memorandum. We affirm the goal change orders.

Briefly, this appeal concerns three of Mother's children: G.E., born in November of 2018; L.W., born in June of 2020; and A.W., born in July of 2021 (collectively, Children). Children were adjudicated dependent on August 22, 2023. N.T., 10/18/24, at 13. On July 9, 2024, Agency requested a goal change from reunification to adoption in Children's dependency proceedings and concurrently filed TPR petitions. On July 12, 2024, the trial court appointed Sarah Grape, Esq., as counsel for Mother; Danielle Melillo, Esq., as counsel for Children; and Zach Shekell, Esq., as guardian *ad litem* for Children.

The trial court held hearings on Agency's goal change requests and TPR petitions on October 18, 2024 and December 20, 2024. Prior to the October 18, 2024 hearing, Mother filed a motion *in limine* objecting to Agency's notice of proposed exhibits in the TPR matter on the basis that they contained statements made by "out of court third parties" and were therefore "inadmissible hearsay." Mother's Mot. *in Limine*, 10/18/24, at 2-3. At the

---

[1] This Court consolidated these appeals *sua sponte* on February 11, 2025. **See** Order, 2/11/25.

- 3 -

outset of the hearing, the trial court entertained arguments regarding the admissibility of Agency's exhibits.  *See* N.T., 10/18/24, at 4-9.  Specifically, Mother objected to the admission of exhibits consisting of a criminal complaint against Mother, Agency's dependency petitions for Children, and letters from CenClear, a drug and alcohol treatment provider.  *See id.* at 5-8.  Agency responded that the trial court could take judicial notice of the criminal complaint because it was "part of the court record in [Mother's] criminal docket[]" and of the dependency petitions because they were "already part of the [dependency] docket."  *Id.* at 5.  Agency further argued that the letters from CenClear could be admitted as Agency's "business records."  *Id.*  Mother responded that Agency's proposed exhibits contained hearsay statements by parties not available to testify or be questioned, including the statement of the police officer in the criminal complaint, allegations in the dependency petitions, and statements of CenClear staff.  *Id.* at 6-7.  Further, Mother argued that the CenClear letters were not Agency's business records and Agency had not produced a custodian of records to qualify them as CenClear's business records.  *Id.* at 7.

Ultimately, the parties stipulated to the date that CenClear had discharged Mother from its program but agreed to exclude the letters that addressed the reasons for discharge.  *Id.* at 8.  The trial court took judicial notice of the criminal complaint and the dependency petitions and admitted them over Mother's objections on the basis that these items were "part of the record in those cases, readily available to the [trial court]" and, also, because

Mother had pled guilty to the offense charged in the criminal complaint. *Id.* at 8-9.

After the resolution of Mother's motion *in limine*, Agency then asked the trial court to "incorporate [Children's] dependency proceedings . . . as part of the record in the TPR proceedings[,]" by which Agency meant not just "specific transcripts" but "the entirety of the dependency case." *Id.* at 10-12. Mother objected on the basis that "the standard of evidence in the dependency proceedings is not the same as the [TPR] proceeding; hearsay is not admissible here, it was then, so I don't believe that an entire record without more scrutiny can be incorporated into the TPR proceeding." *Id.* at 11. The trial court, reasoning that it had presided over most if not all of Children's dependency proceedings over the past two years, and that "those aren't things that I can unhear at this point in time," admitted Children's dependency proceedings in their entirety. *Id.* at 12.

After these evidentiary rulings, the trial court heard from Amanda Gregory, Agency caseworker for Children's cases, who testified regarding statements made by other Agency caseworkers who had responded to concerns about Children's living conditions. *Id.* at 13-14. Ms. Gregory's responses about these living conditions were replete with statements such as "[t]hey observed" and "it was observed" and lacked any indication that she had first-hand knowledge of the facts to which she was testifying. *Id.* Next, counsel for Agency handed Ms. Gregory a copy of the criminal complaint against Mother and the related criminal docket and Ms. Gregory testified that

the docket reflected that Mother had pled guilty to a charge of child endangerment. *Id.* at 15-16. Ms. Gregory then testified to the events described in the criminal complaint, stating that "it was observed" and that events "were observed," without indicating that she had first-hand knowledge of the facts to which she was testifying. *Id.* at 17. Next, Agency asked Ms. Gregory, over Mother's objection, about Mother's drug and alcohol intake with CenClear and Ms. Gregory testified that CenClear had provided Agency with "a warning of discharge unsuccessful letter[,]" an "unsuccessful discharge letter for January 26th[,]" and that Mother had been "unsuccessfully discharged for the second time on July 5th of 2024" by CenClear. *Id.* at 20-21. When asked whether Mother had consistently attended appointments with CenClear, Ms. Gregory testified, over Mother's objection, about Mother's missed appointments with CenClear, without any indication that Ms. Gregory had first-hand knowledge of the facts to which she was testifying. *Id.* at 21.

Mother testified that she had been forthcoming with the CenClear interviewer about her drug use history and Children's dependency history and the interviewer concluded that Mother did not "need to have any treatment at this time" but that Agency contacted CenClear after this assessment and CenClear then informed Mother that "it was mandated that I do services through them[.]" N.T., 12/20/25, at 196-97. On cross-examination of Mother by Children's counsel, on the question of whether CenClear had recommended drug and alcohol treatment for Mother, Mother responded as follows:

Q: So, fair to say [Children] have been in care for sixteen months and you haven't completed any of those that we just listed, right? You haven't completed stable housing. You haven't completed drug and alcohol assessment –

A: I did have stable housing before I came in here.

Q: But as you sit today, you don't, right?

A: Yeah, that's correct.

Q: Okay. So, we're at sixteen months and you don't, you're not consistent with mental health treatment, you haven't completed a drug and alcohol assessment or the recommendations, you don't have stable housing. Fair to say right now it's been sixteen months and those three things do[n't] exist right now.

A: Yeah, but like I testified earlier, I am working on drug and alcohol and mental health in the jail, as we speak.

*Id.* at 241.

At the conclusion of the hearing on December 20, 2024, the trial court terminated Mother's rights to Children pursuant to Subsections 2511(a)(1), (a)(2), (a)(5), and (b) of the Adoption Act[2] and changed Children's permanency goals to adoption. Subsequently, on December 30, 2024, the trial court entered written decrees memorializing these decisions. **See** Trial Ct. Orders, 12/30/24. Mother filed timely notices of appeal. Both Mother and the trial court complied with Pa.R.A.P. 1925.[3]

On appeal, Mother raises the following claims of error, which we restate as follows:

---

[2] 23 Pa.C.S. §§ 2101-2938.

[3] Specifically, the trial court filed six Rule 1925(a) opinions, one for each termination order and each goal change order.

- 7 -

1. Whether the trial court abused its discretion and/or erred in admitting and relying upon records in the dependency proceedings as competent evidence in the termination proceedings?

2. Whether the trial court abused its discretion and/or erred in admitting and relying upon hearsay as competent evidence in the termination proceedings?

3. Whether the trial court abused its discretion and/or erred in finding, despite the lack of clear and convincing evidence, that [] Mother's parental rights should be terminated pursuant to 23 Pa.C.S.[] § 2511(a)(1), (a)(2), (a)(5), and (b)?

Mother's Brief at 3-5 (some formatting altered and some issues consolidated).[4,5]

Mother's first two issues are related; therefore, we address them together. First, Mother argues that the trial court erred by overruling her objections to Agency's "motion to incorporate the dependency proceedings, in

_____

[4] We note that Mother also raised challenges to the goal-change orders in her Pa.R.A.P. 1925(2)(i) statements for the dependency matters. *See* Mother's Statement of Matters, 1/21/25, Docket Nos. CP-16-DP-20-2021, CP-16-DP-21-2021, and CP-16-DP-22-2021. Mother has not raised theses issue in her appellate brief. *See* Mother's Brief at 3-40. Accordingly, Mother has abandoned and, therefore, waived any claims regarding the goal change orders on appeal. *See* Pa.R.A.P. 2116(a), 2119(a); *see also **Allied Envtl. Serv., Inc. v. Roth***, 222 A.3d 422, 424 n.1 (Pa. Super. 2019) (finding waiver where the appellant abandoned claim on appeal).

[5] Agency also argues that Mother waived any hearsay claim because she failed to include such a claim in the "five errors" identified in her Rule 1925(2)(i) statement for the termination orders. *Id.* at 6. The sixth error in Mother's Rule 1925(2)(i) statement, however, clearly asserts error "in admitting and relying upon hearsay as competent evidence in the termination proceedings." Mother's Statement of Matters, 1/21/25, Docket Nos. 190 OC 2024, 189 OC 2024, and 188 OC 2024, at 2. We therefore conclude that Mother has preserved a hearsay claim for appeal. *See* Pa.R.A.P. 1925(b)(v) (stating that "[e]ach error identified in the Statement will be deemed to include every subsidiary issue that was raised in the trial court").

their entirety, [including testimony,] as part of the record for termination proceedings." *Id.* at 17 (citing N.T., 10/18/24, 10-12), 21. Mother asserts that the dependency record so admitted contained "inadmissible hearsay" and "could [have] also contain[ed] other inadmissible evidence on the basis of irrelevance or other objections [that] Mother did not have the opportunity to scrutinize . . . [to] provide specific objections to specific exhibits or pieces of prior testimony." *Id.* at 17-18. Mother contends that the trial court's reasons for incorporating the dependency proceedings into the record, "that it had heard all of those proceedings" and could not "'unhear'" those facts, constitute "reversible error" as "'a court may not ordinarily take judicial notice in one case of the records of another case . . . even though the contents of those records may be known to the court.'" *Id.* at 18 (citing *In re A.J.R.-H.*, 188 A.3d 1157, 1167 (Pa. 2018) and *In re T.B.*, [2021 WL 4551600, *7], (Pa. Super. 2021).

Mother notes that "[h]earsay is an out of court statement offered for the truth of the matter asserted[]" and "is not admissible in an involuntary termination proceeding . . . absent [a] hearsay exception." *Id.* at 19-20 (citations omitted). Mother also notes that *A.J.R.-H.* held that since the agency therein "did not attempt to qualify their records under any hearsay exception [that] the trial court abused its discretion by admitting them and relying upon them to reach its verdict." *Id.* at 20. Mother further directs our attention to *In re Sanders Children*, 312 A.2d 414 (Pa. 1973), in which our Supreme Court vacated a termination decree because the trial court erred in

admitting hearsay evidence and could have relied on this evidence to determine whether the parent complied with court-ordered goals and to make credibility determinations. *Id.* at 20-21 (citing *Sanders*, 312 A.2d at 417).

Mother contends that Agency offered hearsay evidence to "substantiat[e its] case for termination" but the parties who made these statements were not available to testify or be cross-examined. *Id.* at 21-24. Further, Mother argues that the trial court "relied on this incompetent evidence" – specifically, adverse allegations against Mother in a criminal complaint, in the dependency petitions for Children, and in prior referrals that Agency received about Children – to terminate her parental rights. *Id.* Consequently, Mother argues that she was prejudiced by the erroneous admission of hearsay statements contained in these exhibits. *Id.* at 22-25.

In response to Mother's hearsay claims, Agency argues that the trial court did not rely on inadmissible hearsay but, even if it did, that other evidence supported the same findings of fact and, therefore, any "alleged hearsay evidence introduced by [] Agency did not have a direct and significant impact on the case but rather. . . was harmless error." Agency's Brief at 4-12. In its brief, Agency does not contend that any exceptions to the hearsay rule would apply to the contested evidence from the dependency proceeding.

It is well settled that "the decision to admit or exclude evidence is within the sound discretion of the [trial] court." *A.J.R.-H.*, 188 A.3d at 1166-67 (citation omitted); *see also In re Baby Boy S.*, 615 A.2d 1355, 1361 (Pa. Super. 1992). "A reviewing court will not disturb these rulings absent an

abuse of discretion. Discretion is abused if, *inter alia*, the [trial] court overrides or misapplies the law." **A.J.R.-H.**, 188 A.3d at 1167 (citations omitted).

The Pennsylvania Rules of Evidence apply in "proceedings in all courts," including TPR proceedings. **See** Pa.R.E. 101(a), 104(a). Hearsay is defined as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). "Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802; **see also A.J.R.-H.**, 188 A.3d at 1171-79 (vacating TPR decree where trial court's *en masse* admission, over parent's objection, of dependency file exhibits containing multiple layers of hearsay violated the rule against hearsay). Rules 803 through 804 provide exceptions to the rule against hearsay. **See** Pa.R.E. 803, 803.1, 804.

A document containing a hearsay statement is admissible if it qualifies as a business record under the following criteria in Rule 803(6):

> **(6) Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if:
>
> > (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> >
> > (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

(E) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Pa.R.E. 803(6).

Further, Rule 805 permits the admission of "hearsay within hearsay . . . if each part of the combined statements conforms with an exception to the rule." Pa.R.E. 805. Therefore, where a document is admitted as a business record pursuant to Rule 803(6), any hearsay statement within the document must be separately qualified pursuant to Rule 805 for the statement to be admissible. **See A.J.R.-H.**, 188 A.3d at 1169.

Rule 201(b) permits judicial notice of adjudicative facts for "a fact that is not subject to reasonable dispute," either because it is "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Pa.R.E. 201(b). However, "[a] court may not ordinarily take judicial notice in one case of the records of another case, whether in another court or its own, even though the contents of those records may be known to the court." **In re Adoption of P.G.D.W.**, 1741 MDA 2023, 2024 WL 3201197, at *6 (Pa. Super. 2024) (unpublished mem.) (citing, *inter alia*, **220 Partnership v. Philadelphia Elec. Co.**, 650 A.2d 1094, 1097 (Pa. Super. 1994)). This Court concluded that the trial court in **P.G.D.W.** erred when it took judicial notice of

the contents of the dependency file over the parent's objection and absent witness testimony.  *See P.G.D.W.*, 2024 WL 3201197, at \*6 (citing to *A.J.R.-H*, 188 A.3d at 1167).[6]

"To preserve a claim of error pertaining to the admission of evidence, [a] party must, on the record, make a timely objection, motion to strike, or motion *in limine* that states the specific ground, unless the ground was apparent from the context."  *In re Adoption of G.W.*, 342 A.3d 68, 94 n.21 (Pa. Super. 2025) (*en banc*) (citing Pa.R.E. 103(a)) (some formatting altered).  "Once the court rules definitively on the record – either before or at trial – a party need not renew an objection or offer of proof to preserve a claim of error for appeal."  Pa.R.E. 103(b).

In *A.J.R.-H*, our Supreme Court addressed whether a petitioning agency's exhibits "were admissible where the documents comprising the exhibits were not authenticated, submitted for the truth of the matter asserted therein, contained medical/psychiatric opinions and diagnosis and did not fall under any hearsay exception."  *A.J.R.-H.*, 188 A.3d at 1166.  The *A.J.R.-H* Court concluded that the trial court erred in admitting the exhibits as business records of the petitioning agency because

> all of the exhibits were presented . . . for admission, in bulk, by the [petitioner] prior to calling any witnesses to testify.  There was [] no testimony . . . that someone with knowledge created any of the [] exhibits at or near the time of the event or that they were

---

[6] We may cite to non-published decisions of this Court filed after May 1, 2019 for their persuasive value pursuant to Pa.R.A.P. 126(b).

created in the regular practice of the various agencies from which the documents came. Additionally, none of the documents were certified copies. The only information provided at the time of the exhibits' admission was the [petitioner's] assurance . . . that the exhibits were contained in [the petitioner's] files and "were collected in the ordinary course of business with regard to this case."

*Id.* at 1168-69 (citations and footnote omitted). The ***A.J.R.-H*** Court further explained that "a large number of the exhibits contained multiple levels of hearsay[,]" and that when "a hearsay document contains additional hearsay within it . . . each level of hearsay must satisfy an exception to the rule prohibiting the admission of hearsay evidence." ***Id.*** at 1169 (citing, *inter alia*, Pa.R.E. 805).

The ***A.J.R.-H*** Court also concluded that it was error to admit a "written summary of the case" prepared by the agency's caseworker, where "much of [the testifying caseworker's] testimony was based on reports from prior caseworkers as well as casework providers . . . not . . . associated with [the agency]" and the witness had "provided very little testimony based on her interactions with or firsthand knowledge of the members of the family and the events that had occurred that formed the basis of the termination petition." ***Id.*** at 1164 (citation omitted). The ***A.J.R.-H.*** Court observed that the written summary the agency had submitted as an exhibit was "comprised almost exclusively of additional hearsay statements (some with multiple levels of hearsay), for which no exception to the prohibition against hearsay was offered before the [trial] court." ***Id.*** at 1170. The availability of the author of the written summary for cross-examination "was insufficient to render" the

summary admissible because the hearsay statements contained therein could not be subjected to "the test of cross-examination with respect to the 'facts' which underpin its conclusions, a test designed to probe sources of error and untrustworthiness lying beneath the untested assertions of the absent witnesses." *Id.* (citations omitted).

Addressing the rights protected by the rule against hearsay, our Supreme Court stated:

> In the context of a termination proceeding, we have held that where, in light of the record as a whole, an erroneous evidentiary ruling could potentially have affected the decision to terminate a parent's rights to his or her child, an error is not harmless and the parent is entitled to a new hearing and decision. We arrived at this standard because of the serious impact attending the termination of parental rights, finding that it is important that a judicial decree extinguishing such rights be based solely on competent evidence.

*Id.* at 1170-71 (citing to *Sanders*, 312 A.2d at 417; footnote omitted and some formatting altered).

The *A.J.R.-H.* Court ultimately declined to find that the "*en masse* admission" of the agency's exhibits was harmless error because it could not conclude that the trial court had not relied on the inadmissible hearsay to terminate parental rights under Section 2511(a)(1) and (b). *See id.* at 1173-74 (stating that "we simply cannot conclude that the erroneous admission of the exhibits played no role in the [trial] court's decision"). Therefore, the *A.J.R.-H.* Court vacated the trial court's decree and remanded the case for a new TPR hearing. *See id.* at 1175, 1179; *see also id.* at 1178 (the Supreme

- 15 -

Court further declined to affirm on another basis, such as the evidence exclusive of the erroneously admitted exhibits, because it was "unable to discern whether and to what extent the content of the exhibits influenced the credibility determinations made by the [trial] court[]" and, as an appellate court, it would not "engage in fact finding, weigh[ing] the competent (non-hearsay) testimony . . . and mak[ing] . . . credibility determinations").

Here, the trial court explained:

> The court allowed evidence presented at past dependency hearings to be admitted during the termination proceedings because [the same judge] presided over almost all dependency hearings over the past two years for all three children. [N.T., 10/18/24, at 12]. Despite incorporating the dependency proceedings, the court properly relied on competent evidence, which was derived from [] Agency's petition and the two-day hearing on the involuntary termination of Mother's parental rights. The dependency and involuntary termination cases share many of the same factual events, and the court considered this shared information as competent evidence through the records and witness testimony presented at the termination hearing. Furthermore, Mother's counsel was provided an opportunity to challenge all of the evidence presented. Therefore, the trial court did not abuse its discretion nor err in admitting and relying upon records that were properly presented as competent evidence in both the dependency and involuntary termination hearings.

Trial Ct. Op., Docket No. 190 OC 2024, 3/18/25, at 7-8 (unpaginated).

After our review of the record, we conclude that the trial court erred in admitting exhibits containing hearsay statements over Mother's objection. *See A.J.R.-H.*, 188 A.3d at 1166-67; *see G.W.*, 342 A.3d at 94 n.21. Agency, as the proponent of this evidence, was required to establish a proper basis for its admission. *See* Pa.R.E. 103)(a), 104(a). Agency does not argue, nor has

this Court identified any basis in the record to find, that the documents and testimony that Mother objected to were not hearsay. Instead, as noted above, Agency requested that the trial court take judicial notice of the criminal complaint on the basis that it was part of the record in Mother's criminal case and the dependency petitions because they were part of the dependency cases. **See** N.T., 10/18/24, at 5. Agency also moved to incorporate the complete dependency proceedings into the TPR proceeding record at the outset of the hearing. **See id.** at 10-12.

The trial court abused its discretion by taking judicial notice of the criminal complaint and the dependency petitions because these were records of other cases, even if the contents of those documents were known to the trial court judge. **See** Pa.R.E. 201(b); **see also 220 Partnership**, 650 A.2d at 1097; **P.G.D.W.**, 2021 WL 3201197, *6. Further, the statements of non-testifying declarants that Agency presented, either through Ms. Gregory's testimony or through documents contained in exhibits, are hearsay because they are out-of-court statements offered to prove the truth of the matters asserted therein. **See** Pa.R.E. 801(c). Therefore, these statements were inadmissible unless Agency established a hearsay exception. **See** Pa.R.E. 802, 803, 803.1, 804; **see also A.J.R.-H.**, 188 A.3d at 1168-70. Because Agency did not identify any exception to the hearsay rule for the criminal complaint, the dependency petitions, and the statements contained in those documents, the trial court abused its discretion by permitting Ms. Gregory to testify about

the contents of those documents over Mother's objection. *See* Pa.R.E. Pa.R.E. 103(a), 802, 805; *see also A.J.R.-H.*, 188 A.3d at 1168-70.

As for the CenClear letters, initially Agency argued that the letters were admissible as Agency's business records. *See* N.T., 10/18/24, at 5. However, the parties ultimately agreed to exclude the letters, which addressed the reasons for Mother's discharge from CenClear's drug and alcohol treatment program. *See id.* at 8. Nevertheless, the trial court allowed Agency to question Ms. Gregory about the contents of these letters over Mother's hearsay objection. *See id.* at 20-21. The CenClear letters do not fall into the business records exception to the hearsay rule because **CenClear**, not **Agency**, is in the practice of providing drug and alcohol assessments and treatment; therefore, these letters were not records made in "the regular practice of [Agency's] activity." Pa.R.E. 803(6); *see also A.J.R.-H*, 188 A.3d at 1167; *P.G.D.W.*, 2024 WL 3201197, at *6. Further, even if admitted as business records, Agency would still need to satisfy separate exceptions for the hearsay statements contained in the CenClear letters. *See A.J.R.-H.*, 188 A.3d at 1169; Pa.R.E. 805. Here, Agency did not invoke any other hearsay exception for the admission of the letters or for the statements of others contained in the letters; therefore, the trial court abused its discretion in permitting Ms. Gregory to testify about the contents of the CenClear letters. *See A.J.R.-H.*, 188 A.3d at 1169; Pa.R.E. 805.

Having concluded that the trial court erred by taking judicial notice of the criminal complaint and the dependency petitions and by admitting

testimony that contained hearsay, we next consider whether the trial court's erroneous evidentiary rulings were harmless. *See A.J.R.-H.*, 188 A.3d at 1170-71.

Here, the trial court states that it gathered the facts "from the testimony and evidence presented at the two-day hearing held on October 18, 2024 and December 20, 2024[.]" *See*, *e.g.*, Trial Ct. Op., Docket No. 190 OC 2024, 3/18/25, at 1 (unpaginated). The trial court further states, without pin cites to the record, that in August of 2021 Children were "declared dependent after [they were] found without proper care when [L.W.] was involved in a near-drowning incident after being left unattended in a bathtub." *Id.* at 1. The trial court continues, without pin cites to the record, that Mother was arrested and charged with endangering the welfare of children after Mother took Children "to a brawl occurring in a parking lot near the family's apartment." *Id.* at 1-2 (some formatting altered). The trial court states that while Mother was incarcerated, an incident occurred requiring G.E. "to be life-flighted to" a hospital. *Id.* at 2.

The trial court also cites Ms. Gregory's testimony repeating statements made by other Agency caseworkers that describe the circumstances that led to Children's dependent status. *See id.* at 4-5. Specifically, the trial court stated that L.W. was "found unresponsive from an overdose of THC in the home" and that "Mother was not home at the time because she was incarcerated on criminal charges, including endangering the welfare of children." *Id.* at 4 (citing N.T., 10/18/24, at 13-14). The trial court "noted

that dry vomit was on the pillow of the children's bed and play kitchen sink in the children's room when caseworkers entered." *Id.* at 4-5 (citing N.T., 10/18/24, at 13-14). The trial court stated that Mother "has not completed drug and alcohol counseling successfully." *Id.* at 5 (citing N.T., 12/20/24, at 241).

Based on the contents of its Rule 1925(a) opinions, we conclude that the trial court relied on Ms. Gregory's testimony to gather the 'facts' based on allegations contained in the criminal complaint, the dependency petitions and/or reports from other caseworkers, as neither the trial court nor Agency point to any other source in the certified record for these 'facts.' The trial court relied on the above allegations to conclude that termination of parental rights was warranted because "Mother has demonstrated a failure to care for [Children] by her lack of parental care, abuse and neglect of [Children], her repeated incarceration, and her continued failure to successfully go through treatment for drug and alcohol as well as mental health." *Id.* at 6.

Based on our review of the record, we conclude that the erroneous admission of hearsay evidence over Mother's objection was not harmless because the trial court relied on this evidence to terminate Mother's parental rights to Children. *See A.J.R.-H.*, 188 A.3d at 1170-71; *see also Sanders*, 312 A.2d at 417. Furthermore, this Court cannot determine – absent our engagement in a fact-finding process, including making credibility and weight determinations on a cold record – whether the trial court would have issued the same order based solely on competent evidence. *See A.J.R.-H.*, 188 A.3d

at 1176, 1178. Accordingly, we are constrained to vacate the termination orders and remand for a new TPR hearing. *See id.* at 1170-71, 1175. However, because Mother abandoned her claims regarding the goal change orders in Children's dependency matters, we affirm the goal change orders. For the reasons stated above, we remand for a new TPR hearing consistent with the rules of evidence and this memorandum.[7] Notwithstanding our vacatur of the trial court's December 30, 2024, TPR order, we do not disturb the placement of Children in foster care where they have remained since August 2023. *See* Trial Ct. Op., 3/18/25, at 3. This will maintain the status quo while the trial court addresses the TPR issues consistent with this memorandum.

Termination orders vacated. Goal change orders affirmed. Remanded for new hearings on termination petitions. Jurisdiction relinquished.

---

[7] As we vacate the order below on the basis that the trial court erroneously admitted hearsay statements and relied on incompetent and, therefore, inadmissible evidence to terminate Mother's parental rights, we need not address the merits of Mother's claims regarding the substantive grounds for termination under 23 Pa.C.S. § 2511.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

10/22/2025